# Commonwealth ex rel. Drum *versus* Gaige.

1. The 11th section of the Act of April 17th 1878, known as the "New
County Act" provides that, "the governor shall immediately appoint and
commission for the new county the necessary county officers as provided by
law, who shall perform the duties, have the power and be subject to the like
qualifications as have county officers of this Commonwealth, and shall con-
tinue in office until the next general election and until their successors shall
be duly elected and qualified." Sect. 7, art. 14, of the Constitution provides
that, "three county commissioners and three county auditors shall be elected
in each county where such officers are chosen in the year 1875, and every
third year thereafter." On August 21st 1878 the new county of Lackawanna
was erected under the provisions of the above act. On the 22d of August
1878, the governor commissioned respondent as commissioner of said county.
At the general election, on the first Tuesday of November in 1878 and 1879
the relator was elected and re-elected to said office: *Held*, that the time for
filling the offices of county commissioners had not arrived at either of said
elections, and the relator was not duly elected, and that the proper time for
electing was in 1881, being the same year when the other counties of the
state were to elect the same officers.

2. The proper time for an election was at the second triennial period. from
1875, when, as here, the first general election was within three months of a
vacancy.

March 30th 1880.  Before Sharswood, C. J., Mercur, Gor-
don, Paxson, Trunkey and Sterrett, JJ.  Green, J., absent.

Error to the Court of Common Pleas of *Lackawanna county :*
Of January Term 1880, No. 234.

Quo warranto at the relation of R. C. Drum against H. L. Gaige
to show by what warrant he held the office of county commissioner
of Lackawanna county.

On the 21st of August 1878, the governor of this Commonwealth,.
in pursuance of the Act of 17th April 1878, issued his proclama-
tion declaring that a majority of the votes cast at an election held:
on the 13th of August 1878, in accordance with the above recited
act, were in favor of the erection of the new county of Lackawanna;
and thenceforth the said new county was established, with all the·
rights, powers, and privileges of other counties of this Common-
wealth.

13 Norris—13

[Commonwealth *v.* Gaige.]

Vacancies thus happened in the office of county commissioner, and to fill these vacancies the governor, on the 22d of August 1878, in accordance with the provisions of the Constitution and laws of this Commonwealth, appointed and commissioned three county commissioners until the end of the next session of the senate. As one of these county commissioners he appointed H. L. Gaige, the respondent, who accepted the appointment and commission, and immediately qualified according to law, and entered upon the discharge of the duties of his office.

At the next session of the senate, the governor nominated the said H. L. Gaige as a county commissioner, and by and with the advice and consent of two-thirds of all the members of the senate, appointed and commissioned him as a county commissioner of Lackawanna county until his successor should be duly elected and qualified. The respondent also accepted this appointment and commission, qualified according to law, immediately entered upon the discharge of the duties of his office, and continued to discharge the same when this writ issued.

On the 5th of January 1880, R. C. Drum, the relator, claiming that he had been elected to the office of county commissioner of Lackawanna county on the 4th day of November 1879, filed his suggestion, and obtained a rule from the Court of Common Pleas of Lackawanna county on the respondent to show cause why a 'writ of quo warranto should not issue against him commanding him to appear and show by what authority he exercises the office of county commissioner of Lackawanna county.

Upon the return day of the rule, the respondent filed his reasons (called an answer by the relator) why a writ of quo warranto should not issue in this case. Upon due consideration, on the 26th of January 1880, the court adjudged that the relator was not entitled to the writ of quo warranto prayed for. On the 27th of January 1880, however, at the suggestion of relator the court directed a writ of quo warranto to issue, and thereupon judgment to be entered in favor of the respondent.

Hand, A. L. J., delivered the following opinion:

"This is a proceeding to test the title of Henry L. Gaige to the office of county commissioner of Lackawanna county. On the 5th of January 1880, we granted this rule, returnable 19th January 1880. At that time the evidence was adduced on a hearing and full arguments made on the merits. The facts are as follows: Suggestions were filed January 5th 1880. The election returns for the election held 4th November 1879, show that H. F. Barrett received 5334 votes; R. C. Drum received 5233 votes; Dennis Tierney received 2729 votes, which were the highest number of votes cast for any persons for the office of county commissioner.

The election returns for election held 5th November 1878, show that H. F. Barrett received 4417 votes; R. C. Drum received

[Commonwealth v. Gaige.]

4497 votes; M. Boland received 3142 votes, which were the highest number of votes cast for any persons for the office of county commissioner at that election.

"April 17th 1878, the New County Act was passed, Pamph. L. 17, being a general law under which Lackawanna county was erected.

"August 21st 1878, the proclamation of the governor was issued establishing the new county.

"August 22d 1878, the governor appointed and commissioned all the county officers, inter alia, Henry L. Gaige, H. F. Barrett and Dennis Tierney to be county commissioners until the next session of the senate and until their successors are duly elected and qualified. These commissioners were confirmed by the senate, have since that time filled the office and are now in office.

"We have presented by the foregoing facts the issue which we are to decide, viz: The defendant claiming to hold his office by virtue of his appointment and commission until a successor is duly elected and qualified, and the relator claiming to have been duly elected and qualified on the 5th day of January 1880.

"'Due election and qualification could only result from action in accordance with the Constitution and existing laws:' Evans v. Walsh, 1. Lack. Leg. Rec. 342. We address ourselves to the construction of these from the best light we can gather. The respondent must hold his office, if at all, under the 7th section of article 14 of the Constitution, and the clause in the New County Act of 1878, sect. 11, Pamph. L. 19, which provides that the appointees of the governor shall continue in office until 'the next general election, and until their successors shall be duly elected and qualified.' The respondent may hold his office, 1. If he can show a positive right under the Constitution and laws; or, 2. In the absence of this, if he can show that this relator is not a successor duly elected and qualified. We are aware of the importance attached to these questions; that they involve not only the rights between these two contestants, but indirectly the terms of the other commissioners of the county. We are, however, to dispose of them irrespective of results, and only as we conceive the law to govern.

"The 7th section of article 14 of the Constitution is new to our constitutional law. It makes what were before mere statutory offices constitutional ones. It puts upon the offices of commissioner and auditor the character to which they are entitled under the laws and usages of the Commonwealth, and the importance which really attaches to them, as they affect both the citizen and the state. Prior to this the commissioners were changed partially, one member retiring each year. Now the whole are changed at the end of three years. Prior to this the dominant party controlled the whole board; now a minority representation is provided for. Casual

[Commonwealth *v.* Gaige.]

vacancies are now filled by the Court of Common Pleas by the appointment of an elector of the proper county who shall have voted for the commissioner whose place is filled. It is evident in order to preserve this minority representation that this appointment must be to the end of the whole triennial period for which the commissioners, as a board, were elected, and not to the next election ; nor, if within three months, to the second succeeding general election, as provided in sect. 8, art. 4. That section, therefore, cannot give us any light upon this subject as regards this question, as it could in regard to other offices which by law may be filled by the governor. It is clear, therefore, that in each county the term of county commissioner is a fixed term of three years, and that while under sect. 2 other county officers may begin a term within a period that would have belonged to their predecessors if they had continued in office, it is not so with county commissioners and county auditors. A vacancy in other elective offices may be filled by an election taking place over three months after the vacancy exists, or at farthest the second election after, but not so with county commissioners. We have then this fact within sects. 2 and 7 of art. 14, of the Constitution, about which there can be no dispute, that a term of county commissioners once commenced in a county, they are to be elected at each successive period of three years thereafter.

"Now the next question is, does sect. 7 of art. 14 preserve this period uniform throughout the state, so that all commissioners throughout the state are to be elected at the same time. On this question it seems to us hangs the merit of this controversy. If we err here, our error is vital. We have no light to guide us but the common rules of interpretation governing constitutional questions. The debates of the convention are referred to. These are often deceptive, for while sometimes they may guide, the Constitution was the article of the people, and how they understood it is what courts of law look at. We think that construction is to be adopted which accepts the natural and necessary result produced by the language used. This no more than the rule that 'every word employed in .the Constitution is to be expounded in its plain, obvious and common-sense meaning :' Dwar. on Stat. and Const. Now let us apply this principle to this section. 'Three county commissioners and county auditors shall be elected in each county where such officers are chosen, in the year one thousand eight hundred and seventy-five,' and every third year thereafter.' The first meaning that would be attached to this clause by the people, members of the convention, or any one who reads it would be gathered from the result produced by its operation. What would be that operation ? Most clearly that in all counties throughout the state where county commissioners are chosen. the elections would be in the same year, viz., 1875, and every third year thereafter ;

[Commonwealth v. Gaige.]

in other words, the election of county commissioners would be uniform as to time throughout the state.    Any different interpretation than this would place this county of Lackawanna in a different category from the other counties in the state, and that against the plain and obvious meaning of this section, which relates especially to county commissioners.    That there are reasons why this election should be uniform and why the year 1875 was selected, will be obvious on a moment's reflection.    The year 1875 occurs immediately before the year of the triennial assessment, which, since 1846, has become a fixed fact in our tax system, so that the commissioners and auditors are now in office during the existence of the assessments over which they have control and with which they have to do.    Again, the county commissions are officers with whom the state has an immediate business connection, and it is a matter of convenience for the state officials to know when their terms expire and who are elected, through a uniform system.    An examination of the New Constitution, and of the debates in the convention, at once shows that throughout the instrument an effort has been made to produce uniformity in all possible matters throughout the state.    In the schedule the year 1875 is again made emphatic as the one in which these triennial elections were to begin throughout the state by the provision in sect. 28, that the previous terms of all county commissioners shall expire on the first Monday of January 1876, thereby depriving officers of a portion of their terms against the general spirit of the instrument, when it could have easily preserved the terms of those already elected to the expiration of the term of the youngest in office. This uniformity is in no way essentially connected with the system of limited voting and minority representation introduced in the seventh section, because, as will be seen in this present case, it can now begin with this year in Lackawanna county if we hold that these commissioners were properly elected at the last election, and yet this uniformity, as we have shown, is a necessary result of the language used.

"Again, suppose we transpose the words of the 7th section as far as may be, and read it thus: "The county commissioners * * * shall be elected in each county every third year after the year 1875."    It will hardly be doubted what the import of the words are.    This being so, is there anything in the Constitution to restrain or control this meaning?    We fail to discover it.    It is argued that under section 8, art. 4, the election shall be held at the second succeeding general election.    It is a question whether under the Constitution the office of county commissioners is an office which the governor has power to fill.    Evans v. Walsh does not decide that question, as it was not raised in a case where vacancies are directly provided for in the Constitution.    Vacancies in the office of county commissioners are by the Constitution filled

[Commonwealth *v.* Gaige.]

by the court. But it is clear that the Act of 17th April 1878 does give power to the governor to fill this vacancy at the erection of the new county. That power, however, provides that the appointees shall " continue in office until the next general election and until their successors shall be duly elected and qualified." It was held in Evans *v.* Walsh by Judge WOODWARD, that " next general election " was qualified by the three months clause of sect. 8, art. 4 of the Constitution, or in other words, that next general election meant the next legal general election. We have seen that this clause and principle must necessarily bend to sect. 7, art. 14, in filling a vacancy in the office of county commissioners in order to preserve the minority representative principle. We therefore think that the " next general election " as it relates to county commissioners must be qualified by sect. 7, art. 14, instead of the 8th section of article 4.

" This construction does no violence to any clause, but gives force to all. In truth, it is not a forced construction, but perfectly in harmony with the language to interpret sect. 8, art. 4, by saying that the second succeeding general election would in the case of county commissioners and auditors (triplicate officers) be complied with exactly at the second triennial period when the first was within three months of a vacancy. It is urged that we thereby continue in office county commissioners for two years without an election by the people. It is true, but so the law provides.

" The people ask only to fill their offices according to law, and if that is a fair interpretation, the spirit and letter of our law is fulfilled and the rights of the people preserved. Again, it is no more than often occurs. In this very office of county commissioner a vacancy occurring a few days after an incumbent enters upon his duties would be filled by the court for nearly three years without an election by the people; and, under the decision of Broom *v.* Hanley, where a person elected dies before entering upon the duties of his office, many officers are continued merely by the clause in the law, or their commissions, that provides they shall hold till their successors are duly elected and qualified. In the case of People *v.* Whitman, 10 Cal. 44, it was held that this clause in a commission was as much a part of a term as the term itself of the office. The same principle is recognised in York County *v.* Small, 1 W. & S. 315. If these principles of construction are correct, then the time for filling the offices of county commissioners had not arrived in November 1879, and this relator was not duly elected, and the proper time for electing is in 1881, being the same year when other counties of the Commonwealth elect the same officers.

" It is urged that if we give a technical interpretation to art. 7, sect. 14, that then an election must take place in Lackawanna county in 1878, and that Drum, being then elected, is entitled to take his seat against Gaige by virtue of that election. The answer

[Commonwealth *v.* Gaige.]

to that position is that the Constitution must be construed together, and that effect given to it which meets and harmonizes all its requirements. A principle is prominent in its provisions, and the one upon which Evans *v.* Walsh turned, that the people shall have at least three months' notice of a vacancy to be filled before any election can take place. This is a wholesome provision emphasized by our Supreme Court, and effect was first given to it in an Act of Assembly in the election of judges against the want of the provision in the Constitution of 1838. We hold, therefore, that an election could not take place in 1878, and believe this was settled in the case of Evans *v.* Walsh. It could have taken place if the county had been organized over three months before an election.

"We are again urged to allow the election of Mr. Drum to be effective from the time of his election until 1881, when the Constitution provides that all commissioners are to be elected. We answer that this would be to allow the people to fill a vacancy which is "casual," when the Constitution provides it shall be filled by the courts.

"It is argued, by way of analogy, that the Constitution of 1838 provided that the first election of prothonotaries, clerks, &c., should be at the election of representatives in 1839, and that it will not be pretended that that created fixed periods throughout the state. This is true, but the case is in no way analogous. That article (of the schedule of 1838, sect. 10) provided that they should be "elected in such manner as may be prescribed by law," not at a certain year, and every three years thereafter. The Act of 1839, Pamph. L. 559, passed in pursuance of this, states at the outset that these officers shall be elected at the next general election, and whenever it becomes necessary for an election, and then provides, in filling vacancies (sect. 4), that they shall be filled by election at the next general election after the vacancy, for three years.

"We think that the respondent is entitled to hold his office: First, under his commission, which gives him the office until his successor is duly elected and qualified; second, that the relator cannot disturb him in the possession of that office, not having been duly elected.

"In so holding, we violate no principle of sect. 8, art. 4, of the Constitution. We fulfil the letter and spirit of sect. 7, art. 14, and sect. 28 of the schedule and the Act of 17th April 1878. It is in favor of the view that we have taken that it permits Lackawanna county to take its place among the counties of the state without presenting any different period for the election of commissioners and auditors, and it is no injury to the public weal that the same commissioners who have begun the work of formation should be allowed to complete the work they have begun during the first triennial period. This cause has been argued before us on a rule to show cause and the facts pertinent to its disposition

[Commonwealth *v.* Gaige.]

adduced as if upon its merits.   In order to conform to the practice as laid down in Murphy *v.* Farmers' Bank, 8 Harris 420, we will deny this motion, but with leave, if counsel for the relator deem it necessary to preserve their rights for a review in the highest court, to move at any time for such further action as under the practice may be necessary.   We think, however, under that decision, that inasmuch as we decide the case upon a full hearing on its merits, a denial of the writ will be sufficient.   The writ in this case is therefore denied.

"Now, 27th January 1880, at the request of relator, and in order that the record may be in proper shape for review, it is directed that a writ of quo warranto be issued in the above entitled case, and thereupon judgment to be entered in favor of the respondent, with right to relator to writ of error."

The relator took this writ, and alleged that the court erred in entering judgment for the respondent.

*F. L. Hitchcock* and *I. H. Burns*, for plaintiff in error.—The whole object of sect. 7, art. 14, of the Constitution was evidently to introduce the system of minority representation in boards of county commissioners and auditors.   To do so, it was necessary that the terms of auditors and commissioners in office at the time of the adoption of the Constitution should all · expire at some definite time, and to accomplish this was the object of sect. 28 of the schedule, fixing the first Monday of January 1876 as that time. Any other time might have been selected as well, but this happened to have been the particular time adopted.   The system of minority representation was the object aimed at, and to which the matter of particular dates was entirely subordinate and in itself of no importance.   Said section was, by the very language of the section itself, designed to be limited, so far as dates are concerned, to the counties then in existence.   Certainly, it could not have been intended by the framers of the Constitution that an election for county commissioners should be held in the county of Lackawanna in the year 1875, for the county then had no existence, and if not in 1875, then not in 1878 or in 1881.   This section prescribes a mode in which county commissioners shall be elected, and whenever they are elected they must be elected in the manner provided, because the system itself was designed for new counties, as well as for those in existence at the adoption of the Constitution. The office of the provision to "hold until his successor is duly elected and qualified" is simply to bridge over a chasm caused by some occurrence unforeseen and out of the usual order of events In this case there has been no such occurrence.

*Lemuel Amerman*, for defendant in error.—When, under this act and the Constitution, could a successor to the respondent,

[Commonwealth v. Gaige.]

appointed on the 22d of August 1878, be elected? On the 5th of November 1878, and on the 4th of November 1879, is the relator's answer, at both of which elections he claims to have been elected. But the next general election after the 22d of August 1878, at which a county commissioner can be elected under the Constitution, will be in 1881. The next general election after the appointment of the respondent was, it is true, on the 5th of November 1878, but this must be qualified by the Constitution. In the election of county surveyor in Lackawanna county in 1878, this court held that "the next general election" in the section now under consideration did not mean absolutely the next general election, but the next general election at which an election for county surveyor could be held under the Constitution and laws: Walsh v. Com. ex rel. Evans, 8 Norris 419.

Though the 5th of November 1878 was strictly the day of the next general election after the 22d of August 1878, this court held that under the laws and the 8th section of the 4th article of the Constitution it was not the next general election, but that the 4th day of November 1879 was the day of the next general election for the election of county surveyor. By a parity of reasoning, the 5th day of November 1878 was strictly the day of the next general election after the 22d day of August 1878, yet under the 7th section of the 14th article of the Constitution it was not the next general election, but the general election in the year 1881 will be the next general election for the election of county commissioners. By this interpretation, and by this alone, the law and the Constitution are in harmony.

The judgment of the Supreme Court was entered, May 3d 1880,

PER CURIAM.—It is unnecessary to decide whether the judgment of the court below, without a service of the writ upon the defendant, was regular, as upon the merits we are of opinion that the relator showed no right under the Constitution and laws to the office held by the defendant, and we affirm this judgment upon the opinion of the learned judge below.

Judgment affirmed.