# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Doug McLinko, | : | **CASES CONSOLIDATED** |
| Petitioner | : | |
| | : | |
| v. | : | No. 244 M.D. 2021 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of State; and | : | |
| Veronica Degraffenreid, in her | : | |
| official capacity as Acting Secretary | : | |
| of the Commonwealth of Pennsylvania, | : | |
| Respondents | : | |
| | | |
| Timothy R. Bonner, P. Michael Jones, | : | |
| David H. Zimmerman, Barry J. Jozwiak, | : | |
| Kathy L. Rapp, David Maloney, | : | |
| Barbara Gleim, Robert Brooks, | : | |
| Aaron J. Bernstine, Timothy F. | : | |
| Twardzik, Dawn W. Keefer, | : | |
| Dan Moul, Francis X. Ryan, and | : | |
| Donald "Bud" Cook, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 293 M.D. 2021 |
| | : | Argued: November 17, 2021 |
| Veronica Degraffenreid, in her official | : | |
| capacity as Acting Secretary of the | : | |
| Commonwealth of Pennsylvania, and | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of State, | : | |
| Respondents | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION
BY JUDGE LEAVITT[1]                                      FILED: January 28, 2022

Doug McLinko (McLinko) has filed an amended petition for review seeking a declaration that Article XIII-D of the Pennsylvania Election Code,[2] added by Act 77, violates the Pennsylvania Constitution and is, therefore, void. Act 77 established that any qualified elector may vote by mail, but McLinko argues that the Pennsylvania Constitution requires a qualified elector to present her ballot in person at a designated polling place on Election Day, except where she meets one of the constitutional exceptions for absentee voting. *See* PA. CONST. art. VII, §§1, 14. No-excuse mail-in voting cannot be reconciled, McLinko argues, with the Pennsylvania Constitution.

Respondents are the Pennsylvania Department of State and the Acting Secretary of the Commonwealth, Veronica Degraffenreid (collectively, Acting Secretary). She contends that Act 77's system of no-excuse mail-in voting conforms to the Pennsylvania Constitution, which allows elections "by ballot or by *such other method* as may be prescribed by law" so long as "secrecy in voting be preserved." PA. CONST. art. VII, §4 (emphasis added). Nevertheless, the Acting Secretary explains that the Court need not reach the merits of McLinko's challenge to Act 77 because his action was untimely filed and McLinko lacks standing to challenge the constitutionality of Act 77.

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court. Because the vote of the commissioned judges was evenly divided on the analysis in Part III of this opinion, the opinion is filed "as circulated" pursuant to Section 256(b) of the Court's Internal Operating Procedures, 210 Pa. Code §69.256(b).

[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§3150.11-3150.17. Article XIII-D was added by the Act of October 31, 2019, P.L. 552, No. 77 (Act 77).

On August 31, 2021, Timothy R. Bonner and 13 other members of the Pennsylvania House of Representatives (collectively, Bonner) filed a petition for review also seeking a declaration that Act 77 is unconstitutional under Article VII of the Pennsylvania Constitution. Bonner additionally asserts that the enactment of Act 77 violates the United States Constitution. *See Bonner v. Degraffenreid* (Pa. Cmwlth., No. 293 M.D. 2021, filed January 28, 2022). On September 24, 2021, the Court consolidated the McLinko and Bonner petitions, which raise the same question under the Pennsylvania Constitution.[3]

Thereafter, the Democratic National Committee and the Pennsylvania Democratic Party (collectively, Democratic Intervenors), and the Butler County Republican Committee, the York County Republican Committee, and the Washington County Republican Committee (collectively, Republican Intervenors) sought intervention in the consolidated matter. The Court granted them intervention.

Before this Court are the cross-applications for summary relief filed by McLinko and the Acting Secretary. McLinko seeks a declaratory judgment that Act 77 violates the requirement that an elector must "offer to vote" in the "election district" where he or she resides unless the elector has grounds to cast an absentee ballot. PA. CONST. art. VII, §§1, 14. The Acting Secretary seeks an order dismissing McLinko's amended petition with prejudice on procedural grounds or, in the alternative, because it lacks substantive merit.

For the reasons set forth herein, the Court rejects the Acting Secretary's procedural objections to McLinko's amended petition, and it holds that Act 77 violates Article VII, Section 1 of the Pennsylvania Constitution. This holding,

---

[3] The cases have been consolidated because they raise identical issues under the Pennsylvania Constitution. A separate opinion is filed in each case to address the differences in the petitioners' standing and their requested relief.

3

consistent with binding precedent of the Pennsylvania Supreme Court, explains how a system of no-excuse mail-in voting may be constitutionally implemented in the Commonwealth and expresses no view on whether such a system should, or should not, be implemented as a matter of public policy.

We grant McLinko's application for summary relief and deny the Acting Secretary's application for summary relief.

## I. Background

Act 77, *inter alia*, created the opportunity for all Pennsylvania electors to vote by mail without having to demonstrate a valid reason for absence from their polling place on Election Day, *i.e.*, a reason provided in the Pennsylvania Constitution. *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 352 (Pa. 2020). Section 1301-D(a) of the Election Code provides that "[a] qualified mail-in elector shall be entitled to vote by an official mail-in ballot in any primary or election held in this Commonwealth in the manner provided under [Article XIII-D]." 25 P.S. §3150.11(a).[4] A "qualified mail-in elector" or "qualified elector" is any person who meets the qualifications for voting in the Pennsylvania Constitution, "or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election." Section 102(t), (z.6) of the Election Code, 25 P.S. §2602(t), (z.6). Section 1306-D of the Election Code directs that the elector must mark the ballot, "enclose and securely seal [the ballot] in the envelope on which is printed . . . 'Official Election Ballot[,]' place that envelope in a second envelope, "fill out, date, and sign the declaration on [the outside of the] envelope" and put the envelope in the mail. 25 P.S. §3150.16(a).[5]

---

[4] Added by Act 77, *as amended* by the Act of March 27, 2020, P.L. 41, No. 12.

[5] Added by Act 77, *as amended* by the Act of March 27, 2020, P.L. 41, No. 12.

4

Act 77 directed that during the first 180 days after its effective date, any constitutional challenge to Act 77 had to be filed with the Pennsylvania Supreme Court. *See* Section 13(2) of Act 77. On July 26, 2021, McLinko filed a petition for review in this Court challenging the constitutionality of Act 77 after the 180-day period for filing such an action in the Supreme Court had elapsed on April 28, 2020.

McLinko asserts that as a member of the Bradford County Board of Elections, he is responsible for the conduct of elections within that county, including voter registration, voting on election day and the computation of votes. Amended Petition ¶¶3,5. McLinko must certify the results of all primary and general elections in the county to the Secretary of the Commonwealth. *Id*. McLinko believes that no-excuse mail-in voting is illegal and that ballots cast in that manner should not be counted. He asserts that under the Pennsylvania Constitution, a qualified elector must establish residency 60 days before an election in "the election district *where he or she shall offer to vote*." Amended Petition ¶12 (quoting PA. CONST. art. VII, §1) (emphasis added). McLinko explains that the Pennsylvania Supreme Court has definitively construed the term "offer to vote" to mean that the elector must "physically present a ballot at a polling place." Amended Petition ¶¶13-14 (citation omitted). Stated otherwise, Article VII, Section 1 requires electors to vote in person at their designated polling place on Election Day.

McLinko acknowledges that there are exceptions to this requirement. Article VII, Section 14(a) of the Pennsylvania Constitution[6] allows absentee voting, and McLinko asserts that this provision authorizes the only exceptions. Amended Petition ¶15. Specifically, a qualified elector may vote by absentee ballot where he is (1) absent from his residence on Election Day because of business or occupation,

---

[6] The complete text of Article VII, Section 14 is set forth, *infra*, in part III.C of this opinion.

5

(2) unable to "attend" his proper polling place because of illness, disability, or observance of a religious holiday or (3) "cannot vote" because of his Election Day duties. Amended Petition ¶16. McLinko believes that only where qualified electors meet one of the exceptions enumerated in Article VII, Section 14(a) may they vote by mail.

McLinko observes that in 2019, Senate Bill 411, Printer's No. 1012, proposed a Joint Resolution to amend Article VII, Section 14 of the Pennsylvania Constitution to end the requirement that qualified electors must physically appear at a designated polling place on Election Day. However, Senate Bill 411 did not pass,[7] and the Constitution was not amended as proposed. McLinko believes that if he certifies no-excuse mail-in ballots, then he will be acting unlawfully because it is his duty "to certify, count, and canvas" votes in a manner "consistent with the Pennsylvania Constitution." Amended Petition ¶48.

---

[7] Senate Bill 411 was considered twice in June 2019 and then re-referred to the Appropriations Committee. *See Pennsylvania Legislative Journal-Senate*, June 18, 2019, 627, 655 and June 19, 2019, 659, 672. The legislative history for Senate Bill 411 explains that "Pennsylvania's current Constitution restricts voters wanting to vote by absentee ballot to [enumerated] situations. . . ." Senator Mike Folmer, Senate Co-Sponsoring Memoranda (January 29, 2019, 10:46 A.M.) https://www.legis.state.pa.us/cfdocs/Legis/CSM/showMemoPublic.cfm?chamber=S&SPick=201 90&cosponId=28056 (last visited January 27, 2022). Senate Bill 411 proposed a constitutional amendment to "eliminate these limitations, empowering voters to request and submit absentee ballots for any reason – allowing them to vote early and by mail." *Id.*

Senate Bill 411 was incorporated into Senate Bill 413, Printer's No. 1653. It proposed, by Joint Resolution, a constitutional amendment to provide that the physical appearance of a qualified elector at a designated polling place "on the day of the election" may not be required. *Id.* Senate Bill 413, Printer's No. 1653 passed; was signed in the Senate and the House on April 28, 2020; and was filed in the Office of the Secretary of the Commonwealth on April 29, 2020. *See Pennsylvania Legislative Journal-Senate*, April 28, 2020, 289, 307; *Pennsylvania Legislative Journal-House*, April 28, 2020, 491, 518; Act of April 29, 2020, Pamphlet Laws Resolution No. 2. No further action was taken.

## II. Standards for Summary Relief

Pennsylvania Rule of Appellate Procedure 1532(b) allows the Court to enter judgment at any time after the filing of a petition for review where the applicant's right to relief is clear. PA. R.A.P. 1532(b).[8] Summary relief is reserved for disputes that are legal rather than factual, *Rivera v. Pennsylvania State Police*, 255 A.3d 677, 681 (Pa. Cmwlth. 2021), and we resolve "all doubts as to the existence of disputed material fact against the moving party." *Id.* (quoting *Marcellus Shale Coalition v. Department of Environmental Protection*, 216 A.3d 448, 458 (Pa. Cmwlth. 2019)). An application for summary relief is appropriate where a party lodges a facial challenge to the constitutionality of a statute. *Philadelphia Fraternal Order of Correctional Officers v. Rendell*, 701 A.2d 600, 617 n.24 (Pa. Cmwlth. 1997) (citing *Magazine Publishers v. Department of Revenue*, 618 A.2d 1056, 1058 n.3 (Pa. Cmwlth. 1992)).

Here, McLinko's petition for review raises a single constitutional question that is appropriate for disposition in an application for summary relief. The Acting Secretary challenges McLinko's petition for review on grounds of laches and standing. These legal issues involve facts, but there is no dispute on the relevant facts. There is no question that McLinko is a member of the Bradford County Board of Elections and a taxpayer. There is no factual question that substantial resources have been expended by the Commonwealth and by county boards of elections to

---

[8] It states: "At any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." PA. R.A.P. 1532(b).

implement mail-in voting and that approximately 1,380,342 electors have been placed on the mail-in ballot list file.[9]

In short, the parties' respective applications for summary relief involve only legal disputes and, thus, are ready for our disposition.

### III. Article VII of the Pennsylvania Constitution

The central question presented in this matter is whether Act 77 conforms to Article VII of the Pennsylvania Constitution, which article governs elections. In resolving this question, we recognize that "'acts passed by the General Assembly are strongly presumed to be constitutional' and that we will not declare a statute unconstitutional 'unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt that a challenger has failed to reach this high burden, then that doubt must be resolved in favor of finding the statute constitutional.'" *Zauflik v. Pennsbury School District*, 104 A.3d 1096, 1103 (Pa. 2014) (quoting *Pennsylvania State Association of Jury Commissioners v. Commonwealth*, 64 A.3d 611, 618 (Pa. 2013)). In construing the Pennsylvania Constitution, "[e]very word employed in the constitution is to be expounded in its plain, obvious and commonsense meaning." *Commonwealth v. Gaige*, 94 Pa. 193 (1880). Our Supreme Court has also instructed that

> all the provisions [of the Constitution] relating to a particular subject . . . are to be grouped together, when considering such

---

[9] The Acting Secretary submitted the affidavit of Jonathan Marks, Deputy Secretary of State for Elections and Commissions. In his affidavit, Marks attests that following the passage of Act 77, Pennsylvania election officials invested significant resources to educate voters about the new mail-in voting procedures and to create systems for the efficient issuance of mail-in ballots and their canvassing. Marks' Affidavit ¶11. County boards of elections invested substantial resources to purchase equipment and to train additional election workers needed to process mail-in ballots. *Id.* ¶¶13-15. Marks also attests that approximately 1,380,342 qualified electors were on Pennsylvania's permanent mail-in ballot list as of the date of his affidavit, August 26, 2021. *Id.* ¶25.

8

subject, and so read that they may blend or stand in harmony, if that can be done without violence to the language.

*Guldin v. Schuylkill Co.*, 149 Pa. 210 (1892); *see also Jubelirer v. Rendell*, 953 A.2d 514, 528 (Pa. 2008).

The three provisions of Article VII relevant hereto are Sections 1, 4, and 14. McLinko argues that Section 1 requires in-person voting, except where expressly permitted under Section 14. He argues that Section 4 applies to the conduct of elections at the polling place. The Acting Secretary responds that Section 4 authorized the legislature to establish a system of no-excuse absentee mail-in voting. Further, she believes that Section 14 sets forth the minimum requirements for absentee voting, but the minimum can be expanded by the legislature using its authority under Section 4.

We begin with a review of each relevant provision of Article VII.

## A. Article VII, Section 1

Article VII, Section 1 of the Pennsylvania Constitution states as follows:

**Qualifications of Electors**

Every citizen 21 years of age, possessing the following qualifications, *shall be entitled to vote* at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact.

1. He or she shall have been a citizen of the United States at least one month.

2. He or she shall have resided in the State 90 days immediately preceding the election.

3. *He or she shall have resided in the election district where he or she shall offer to vote at least 60 days immediately preceding the election,*

9

except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within 60 days preceding the election.

PA. CONST. art. VII, §1 (emphasis added). Section 1 entitles the elector to "offer to vote" in the election district where "he or she shall have resided" 60 days before "the election." *Id*.

The Supreme Court has specifically construed the phrase "offer to vote." *Chase v. Miller*, 41 Pa. 403 (1862), involved a district attorney's race between Ezra B. Chase and Jerome G. Miller. Based on the ballots cast in person on Election Day, Chase led Miller 5811 to 5646. Thereafter, 420 votes were received from Pennsylvania soldiers fighting in the Civil War who had cast their ballots by mail under authority of the Military Absentee Act of 1839.[10] Chase challenged the military votes which, if counted, made Miller the next district attorney by a vote of 6066 to 5869. Chase asserted that the Military Absentee Act of 1839 violated the constitutional requirement that ballots be presented in person.

The Military Absentee Act of 1839 provided that on Election Day a Pennsylvania citizen "in any actual military service in any detachment of the militia or corps of volunteers under a requisition from the president of the United States" was authorized to vote "*at such place as may be appointed by the commanding officer*[.]" *Chase*, 41 Pa. at 416 (emphasis added) (summarizing the Military Absentee Act of 1839). The "great question" before the court was whether this statute could be "reconciled with the 1st section of article 3d of the amended

---

[10] Act of July 2, 1839, P.L. 770. It effectively reenacted an earlier statute, the Military Absentee Act of 1813, Act of March 29, 1813, 6 Smith's Laws.

10

constitution,"[11] the predecessor to the current Article VII, Section 1. *Chase*, 41 Pa. at 418. The Supreme Court ruled it could not, and held that the Military Absentee Act of 1839 was unconstitutional, thereby invalidating all 420 absentee military votes. *Chase*, 41 Pa. at 428-29.

The Supreme Court explained that the 1838 constitutional amendment sought to "identify the legal voter, before the election came on, and *to compel him to offer his vote in the appropriate* ward or township, and thereby to exclude disqualified pretenders and fraudulent voters of all sorts." *Chase*, 41 Pa. at 418 (emphasis added). Given that background, the Court construed the operative language of Article III, Section 1 as follows:

> To "offer to vote" by ballot, is to present oneself, with proper qualifications, at the time and place appointed, and to make manual delivery of the ballot to the officers appointed by law to receive it. *The ballot cannot be sent by mail or express*, nor can it be cast outside of all Pennsylvania election districts and certified into the county where the voter has his domicil. *We cannot be persuaded that the constitution ever contemplated any such mode of voting,* and we have abundant reason for thinking that to permit it would break down all the safeguards of honest suffrage. The constitution meant, rather, that the voter, *in propria persona*, should offer his vote in an appropriate election district, in order that his neighbours might be at hand to establish his right to vote if it were challenged, or to challenge if it were doubtful.

---

[11] Article III, Section 1 stated as follows:

> In elections by the citizens, every white freeman of the age of twenty-one years, having resided in this State one year, and *in the election-district where he offers to vote* ten days immediately preceding such election, and within two years paid a State or county tax, which shall have been assessed at least ten days before the election, shall enjoy the rights of an elector.

PA. CONST. art. III, §1 (1838) (emphasis added).

*Chase*, 41 Pa. at 419 (emphasis added).[12]   In short, the 1838 constitutional amendment required the properly qualified elector to "present oneself . . . at the time and place appointed" to make "manual delivery of the ballot." *Id.*   Following the Supreme Court's decision in *Chase*, the Pennsylvania Constitution was amended in 1864 to permit electors in military service to vote by absentee ballot. PA. CONST. art. III, §4 (1864).[13]

*In re Contested Election of Fifth Ward of Lancaster City*, 126 A. 199 (Pa. 1924) (*Lancaster City*), considered another Pennsylvania statute, the Act of May 22, 1923, P.L. 309 (1923 Absentee Voting Act), which expanded the opportunity for absentee voting from those in military service to include civilians.  The 1923 Absentee Voting Act stated that a "qualified voter . . . who by reason of his duties, business, or occupation [may be] unavoidably absent from his lawfully designated election district, and outside of the county of which he is an elector, but within the confines of the United States" could request an absentee ballot and complete it in the presence of an election official before Election Day.  Section 1 of the 1923 Absentee Voting Act.  However, in 1923, the Pennsylvania Constitution limited absentee voting to those electors absent by reason of active military service.  *See* PA. CONST. art. VIII, §6 (1874).[14]

---

[12] Mail-in ballots present particular challenges with respect to "safeguards of honest suffrage." *Chase*, 41 Pa. at 419.  *See Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994) (injunction granted under Voting Rights Act, *see now* 52 U.S.C. §§10301-10702, setting aside election of Pennsylvania State Senator for fraudulent use of absentee ballots).

[13] The text of Article III, Section 4 of the 1864 Constitution is set forth, *infra*, in part III.C of this opinion.

[14] The text of Article VIII, Section 6 of the 1874 Pennsylvania Constitution was identical to the text of Article III, Section 4 of the Constitution adopted in 1864 to permit those in active military service to vote by mail.  The only change in 1874 was to renumber the provision from Section 4 to Section 6.

In *Lancaster City*, eight votes separated the candidates for councilman at the conclusion of Election Day.  After the absentee ballots were counted, the Republican candidate pulled ahead by nine votes.  The Democratic candidate challenged the results of the election, arguing that the 1923 Absentee Voting Act was unconstitutional and that the absentee ballots should be excluded.  The Supreme Court agreed, concluding that the election should be determined solely on the basis of ballots cast in person on Election Day, as required by Article VIII, Section 1 of the Constitution.  PA. CONST. art. VIII, §1 (1901).[15]

---

[15] Article VIII, Section 1 of the 1874 Constitution stated as follows:

> Every male citizen twenty-one years of age, possessing the following qualifications, *shall be entitled to vote* at all elections:
>
>> *First. -* He shall have been a citizen of the United States at least one month.
>>
>> *Second. -* He shall have resided in the State one year, (or if, having previously been a qualified elector or native born citizen of the State, he shall have removed therefrom and returned, then six months), immediately preceding the election.
>>
>> *Third. - He shall have resided in the election district where he shall offer to vote* at least two months immediately preceding the election.
>>
>> *Fourth. -* If twenty-two years of age or upwards, he shall have paid within two years a State or county tax, which shall have been assessed at least two months and paid at least one month before the election.

PA. CONST. art. VIII, §1 (1874) (emphasis added).  The 1901 amendment changed the first paragraph to read as follows:

> Every male citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections, *subject however to such laws requiring and regulating the registration of electors as the General Assembly may enact[.]*

PA. CONST. art. VIII, §1 (1901) (emphasis added); Joint Resolution No. 1, 1901, P.L. 881. Additionally, the 1901 amendment switched from the use of words to identify the separate paragraphs to the use of Arabic numerals.  In 1933, Article VIII, Section 1 was amended to add the pronoun "she" where appropriate and to eliminate the requirement that the qualified elector be current on tax obligations.  PA. CONST. art. VIII, §1 (1933); Joint Resolution No. 5, 1933, P.L.

In declaring the 1923 Absentee Voting Act unconstitutional, the Supreme Court held that the General Assembly could address voting procedures only in a manner consistent with the "wording of our Constitution," which at that time limited absentee voting to those engaged in military service. *Lancaster City*, 126 A. at 200. The Court held that "[t]he Legislature can confer the right to vote only upon those designated by the fundamental law, and subject to the limitations therein fixed." *Id.* at 201. The Court concluded as follows:

> However laudable the purpose of the [1923 Absentee Voting Act], it cannot be sustained. *If it is deemed necessary that such legislation be placed upon our statute books, then an amendment to the Constitution must be adopted permitting this to be done.*

*Id.* (emphasis added).

The Pennsylvania Supreme Court invalidated the Military Absentee Act of 1839 and the 1923 Absentee Voting Act because each enactment violated the requirement that a qualified elector must "offer to vote" in person at a polling place in his election district on Election Day. PA. CONST. art. III, §1 (1838), PA. CONST. art. VIII, §1 (1901). The Court established that legislation, no matter how laudable its purpose, that relaxes the in-person voting requirement must be preceded by an amendment to the Constitution "permitting this to be done." *Lancaster City*, 126 A. at 201. Based on this analysis and holding, the Supreme Court set aside the votes cast under the invalidated statutes, thereby changing the outcome of two elections.

## B. Article VII, Section 4

The second relevant provision of Article VII is Section 4, and it states as follows:

---

15 59. The 1959 amendment expanded paragraph 3 to read as it does today. PA. CONST. art. VIII, §1; Joint Resolution No. 3, 1959, P.L. 2160. The 1967 amendment renumbered the provision to its current Article VII, Section 1. PA. CONST. art. VII, §1; Joint Resolution No. 5, 1967, P.L. 1048.

**Method of Elections; Secrecy in Voting**

All elections by the citizens shall be by ballot or by such other method as may be prescribed by law: Provided, That secrecy in voting be preserved.

PA. CONST. art. VII, §4. This provision was the result of an amendment proposed by Joint Resolution No. 2, 1901, P.L. 882. Although Article VII, Section 4 has been amended and renumbered over the years, the requirement that elections "shall be by ballot" has been in the Pennsylvania Constitution since 1776.

In the colonial period, elections were conducted by *viva voce* or by the showing of hands, as was the practice in most of Europe. *Burson v. Freeman*, 504 U.S. 191, 200 (1992) (plurality opinion). "That voting scheme was not a private affair, but an open, public decision, witnessed by all and improperly influenced by some." *Id*. Because of the opportunities for bribery and intimidation in the *viva voce* system, the colonies began using written ballots. John C. Fortier & Norman J. Ornstein, *The Absentee Ballot and the Secret Ballot: Challenges for Election Reform*, 36 U. MICH. J.L. REFORM 483, 489 (2003) (FORTIER & ORNSTEIN). In Pennsylvania, the 1776 Constitution provided:

All elections, whether by the people or in general assembly, *shall be by ballot*, free and voluntary: And any elector, who shall receive any gift or reward for his vote, in meat, drink, monies, or otherwise, shall forfeit his right to elect for that time, and suffer such other penalties as future laws shall direct. And any person who shall directly or indirectly give, promise, or bestow any such rewards to be elected, shall be thereby rendered incapable to serve for the ensuing year.

PA. CONST., §32 (1776) (emphasis added). Then, in 1790, the Pennsylvania Constitution was amended to provide that "[a]ll elections shall be by ballot, except

those by persons in their representative capacities, who shall vote *viva voce*." PA. CONST. art. III, §2 (1790).[16]

To vote in Pennsylvania, as in other states, electors wrote the name of their chosen candidates on a piece of paper and brought it to an official location. FORTIER & ORNSTEIN at 489. "These pre-made ballots often took the form of 'party tickets' – printed slates of candidate selections, often distinctive in appearance, that political parties distributed to their supporters and pressed upon others around the polls." *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1882 (2018); *see also Commonwealth v. Coryell*, 9 Pa. D. 632, 635 (1900) (political parties printed the ballots used by electors). The polling place contained a "voting window" through which the voter would hand his ballot to an election official in a separate room with the ballot box. *Minnesota Voters Alliance*, 138 S. Ct. at 1882. "As a result of this arrangement, 'the actual act of voting was usually performed in the open,' frequently within view of interested onlookers." *Id*. (quotation omitted). As voters went to the polls, "[c]rowds would gather to heckle and harass voters who appeared to be supporting the other side." *Id*. at 1882-83.

In 1874, the Pennsylvania Constitution was amended to bind election officials to a duty of non-disclosure of an elector's choice. The amendment provided as follows:

> *All elections by the citizens shall be by ballot*. Every ballot voted shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters, opposite the name of the elector who presents the ballot. Any elector may write his name upon his ticket or cause the same to be written thereon and attested by a citizen of the district. *The*

---

[16] In 1838, Pennsylvania amended its Constitution, but Article III, Section 2 remained unchanged. *See* PA. CONST. art. III, §2 (1838).

16

> *election officers shall be sworn or affirmed not to disclose how any elector shall have voted unless required to do so as witnesses in a judicial proceeding.*

PA. CONST. art. VIII, §4 (1874) (emphasis added). The election official's non-disclosure duty introduced an early form of election secrecy to the system. *De Walt v. Commissioners*, 1 Pa. D. 199, 201 (1892) (citations omitted).

The late nineteenth century saw further election reforms with the adoption of the so-called "Australian ballot," which consisted of a "standard ballot and private voting booth." FORTIER & ORNSTEIN at 486. The Australian ballot system provided "greater freedom and secrecy in voting by providing an official ballot, a marking in a secret compartment, and a deposit of the ballot in the ballot-box without exhibition." *Case of Loucks*, 3 Pa. D. 127, 132 (1893). The Australian ballot prevented "chicanery endemic to the party ballot system, including protecting the privacy of the ballot, and preventing political parties from distributing ballots that looked like the slate of another party but actually listed the candidates of the distributing party." *Working Families Party v. Commonwealth*, 209 A.3d 270, 293 n.11 (Pa. 2019) (Wecht, J., concurring, in part). Between 1888 and 1892, 38 states adopted the Australian ballot. FORTIER & ORNSTEIN at 486.

In 1891, the "so-called Australian ballot system was first introduced in Pennsylvania," with the enactment of the Ballot Reform Act.[17] *Super v. Strauss,* 17 Pa. D. 333, 336 (1908). Commonly referred to as "The Baker Ballot Law," *Case of Loucks*, 3 Pa. D. at 130, the 1891 statute required the exclusive use of "uniform official ballots" as well as the "legal nomination of the candidates" and "voting in a room where electioneering and solicitation of votes is forbidden." *De Walt v. Bartley*, 24 A. 185, 186-87 (Pa. 1892). The Baker Ballot Law specified that the voter

---

[17] Act of June 19, 1891, P.L. 349.

must "retire to one of the voting shelves or compartments, and shall prepare his ballot by marking in the appropriate margin[.]" *Id.* at 188. The ballot used two methods for designating a choice: placing a cross on the ticket to the right of the candidate's name or placing a cross to the right of the party designation. The Baker Ballot Law "insure[d] a secret ballot, and therefore fulfill[ed], better than the system which it supplant[ed], the provisions of the constitution governing the subject of voting[.]" *De Walt*, 1 Pa. D. at 201. Before 1891, "no vote could be kept a secret[.]" *In re Twentieth Ward Election*, 3 Pa. D. 120, 121 (1894).

In 1901, the requirement that a ballot be produced by the government and cast in secret became embedded into the Pennsylvania Constitution with the adoption of Article VIII, Section 4. It stated:

> All elections by the citizens shall be by ballot or *by such other method as may be prescribed by law: Provided, That secrecy in voting be preserved.*

PA. CONST. art. VIII, §4 (1901) (emphasis added); Joint Resolution No. 2, 1901, P.L. 882. The amendment added the language italicized above and deleted the sentences in the 1874 version that had required election officials to number the ballots, obtain the electors' signatures on their ballots, and swear not to disclose how any elector voted. *Cf.* PA. CONST. art. VIII, §4 (1874). The 1901 amendment guaranteed the secrecy of the ballot, both in its casting and in counting. "[T]he cornerstone of honest elections is secrecy in voting. A citizen in secret is a free man; otherwise, he is subject to pressure and, perhaps, control." *In re Second Legislative District Election*, 4 Pa. D. & C. 2d 93, 95 (1956).

The New York Court of Appeals has construed the single phrase "by such other method as may be prescribed by law," which appeared in New York's

18

Constitution, as in Pennsylvania's 1901 Constitution.[18]  The Court of Appeals held that the language "or by such other method as may be prescribed by law" was "not to create any greater safeguards for the secrecy of the ballot than had hitherto prevailed, but solely to enable the substitution of voting machines, if found practicable[.]"  *Wintermute*, 86 N.E. at 819.  Our Supreme Court later agreed that Section 4 was "likely added in view of the suggestion of the use of voting machines" but further noted that "the direction that privacy be maintained is now part of our fundamental law."  *Lancaster City*, 126 A. at 201.[19]

_____

[18] The New York Constitution states, in relevant part, as follows:

> All elections by the citizens, except for such town officers as may by law be directed to be otherwise chosen, shall be by ballot, or by such other method as may be prescribed by law, provided that secrecy in voting be preserved.

N.Y. CONST. art. II, §7.  As the Court of Appeals explained, the phrase "or by such other method as may be prescribed by law, provided that secrecy in voting be preserved," was added by an 1895 amendment.  *People ex rel. Deister v. Wintermute*, 86 N.E. 818, 819 (N.Y. 1909).

[19] The dissent notes that Article VII, Section 6 allows the General Assembly to "permit the use of voting machines, or other mechanical devices for registering or recording and computing the vote . . . ," PA. CONST. art. VII, §6, suggesting that this is the provision that authorizes voting machines. We disagree.

> The text, in full, reads as follows:

> **Election and Registration Laws**

> Section 6.  *All laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the State*, except that laws regulating and requiring the registration of electors may be enacted to apply to cities only, provided that such laws be uniform for cities of the same class, *and except further, that the General Assembly shall, by general law, permit the use of voting machines, or other mechanical devices for registering or recording and computing the vote, at all election or primaries*, in any county, city, borough, incorporated town or township of the Commonwealth, at the option of the electors of such county, city, borough, incorporated town or township, *without being obliged to require the use of such voting machines or mechanical devices in any other county, city, borough, incorporated town or township*, under such regulations with reference thereto as the General Assembly, may from time to time prescribe. The General Assembly may, from time to time, prescribe the number and

Regarding voting methods, one Pennsylvania court has stated that "*[t]he only method of permitted voting, other than ballot, is by voting machine.*" *In re General Election of November 4, 1975*, 71 Pa. D. & C. 2d 83, 91 (1975) (emphasis added) (electors not able to vote by sworn testimony where a voting machine failed to record their vote because to do so would abridge the constitutional requirement for a secret ballot). Treatise authority also explains that the phrase "such other method" was added to Section 4 of Article VII in order to authorize the use of "mechanical devices" in lieu of a paper ballot at the polling place. Robert E. Woodside, Pennsylvania Constitutional Law, at 465 (1985) (WOODSIDE).

## C. Article VII, Section 14

The third relevant provision in Article VII of the Pennsylvania Constitution is Section 14, which states as follows:

**Absentee Voting**

(a) The Legislature shall, by general law, *provide a manner* in which, and the time and place at which, *qualified electors* who may, on the occurrence of any election, *be absent from the municipality of their residence,* because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, are *unable to attend at their proper polling places because of illness or physical disability* or who will not attend a polling place because of the *observance of a*

---

duties of election officers in any political subdivision of the Commonwealth in which voting machines or other mechanical devices authorized by this section may be used.

PA. CONST. art. VII, §6 (emphasis added). When this provision was adopted in 1928, voting machines were already in use. *See Lancaster City*, 121 A. at 201. Section 6 requires uniformity in election law, as stated in the first sentence. But it allows exceptions. The first exception authorizes the imposition of stricter voter registration requirements in "cities." The second exception, added in 1928, clarifies that uniformity does not require that voting machines be used in every polling place in the Commonwealth, if allowed in one county, city, borough, town or township.

*religious holiday or who cannot vote because of election day duties*, in the case of a county employee, *may vote*, and for the return and canvass of their votes in the election district in which they respectively reside.

(b) For purposes of this section, "municipality" means a city, borough, incorporated town, township or any similar general purpose unit of government which may be created by the General Assembly.

PA. CONST. art. VII, §14 (emphasis added). Absentee voting has a long history.

It began with the Military Absentee Act of 1813, which authorized "the citizen soldier who should be in actual service within the state on the day of the general election, an opportunity to vote, if his engagements detained him at the prescribed distance from his domicil." *Chase*, 41 Pa. at 417 (summarizing the 1813 statute). When enacted, the 1790 Pennsylvania Constitution did not require an elector to vote at a certain place. *Id.* However, in 1838, the Pennsylvania Constitution was amended to impose a place requirement, *i.e.*, "in the election-district where [an elector] offers to vote[.]" PA. CONST. art. III, §1 (1838).[20]

Despite this 1838 amendment to the Constitution, the legislature enacted the Military Absentee Act of 1839 in "substantially" the same form as its 1813 predecessor. *Chase*, 41 Pa. at 417. Because the Military Absentee Act of 1839 did not comply with the requirement in the 1838 Constitution that an elector vote in his election district, the Supreme Court struck it down as unconstitutional.

In response to *Chase*, the electorate amended the Constitution in 1864 to provide for soldier voting. It stated:

Whenever any of the qualified electors of this Commonwealth shall be in actual military service, under a requisition from the President of the United States or by the authority of this

---

[20] *See supra* note 11 for the text of Article III, Section 1 of the 1838 Pennsylvania Constitution.

Commonwealth, such electors may exercise the right of suffrage in all elections by the citizens, under such regulations as are or shall be prescribed by law, as fully *as if they were present at their usual places of election.*

PA. CONST. art. III, §4 (1864) (emphasis added). This provision was continued verbatim in the 1874 Constitution but was renumbered as Article VIII, Section 6. Pennsylvania and many other states recognized that absentee voting by the military conflicted with the "constitutional provisions for in person voting, and undertook to amend their state constitutions in order to pass appropriate legislation." FORTIER & ORNSTEIN at 498.

As noted, the 1923 Absentee Voting Act expanded absentee voting to those electors "unavoidably" absent from their designated election district by reason of "duties, business or occupation," which would include military service.[21] *Lancaster City*, 126 A. at 200. In striking down this law, the Supreme Court held that the 1874 Constitution limited the "privilege" of absentee voting to persons who "are in actual military service." *Id*. at 201. *See also* PA. CONST. art. VIII, §6 (1874).

---

[21] The 1923 Absentee Voting Act stated, in relevant part, as follows:

> Be it enacted . . . That any *duly qualified voter of this Commonwealth, who by reason of his duties, business, or occupation is unavoidably absent from his lawfully designated election district* and outside of the county in which he is an elector, but within the confines of the United States, on the day of holding any general, municipal, or primary election, may vote by appearing before an officer, either within or without the Commonwealth authorized to administer oaths, and marking his ballot under the scrutiny of such official as herein prescribed. Such voter may vote only for such officers and upon such questions as he would be entitled to vote for or on had he presented himself in the district in which he has his legal residence, and in the matter hereinafter provided.

Section 1 of the Act of May 22, 1923, P.L. 309 (emphasis added). The statute further provided that after the voter cast his or her vote, and secured the ballot and envelopes as provided in the statute, the "voter shall send [the ballot] by registered mail to the prothonotary or county commissioners in sufficient time to reach its destination on or before the day such election is held." *See* Amended Petition, Ex. A.

In 1949, Section 18 was added to Article VIII of the Pennsylvania Constitution to expand the opportunity for absentee voting to war veterans whose war injuries rendered them "unavoidably absent" from their residence. PA. CONST. art. VIII, §18.[22] Thereafter, in 1957, Section 19 was added to Article VIII to expand absentee voting to all qualified electors unable to vote in person by reason of illness or disability. Section 19 stated:

> *The Legislature may, by general law, provide a manner in which, and the time and place at which, qualified voters who may,* on the occurrence of any election, *be unavoidably absent from the State or county of their residence* because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, *are unable to attend at their proper polling places because of illness or physical disability*, may vote, and for the return and canvass of their votes in the election district in which they respectively reside.

PA. CONST. art. VIII, §19 (1957) (emphasis added); Joint Resolution No.1, 1957, P.L. 1019. For the first time, electors could vote by absentee ballot if "unable to attend at their proper polling place because of illness or physical disability," even though present in the county of their residence. *Id*.

In 1967, the Pennsylvania Constitution was amended in three ways relevant to absentee voting. *See* Joint Resolution No. 5, 1967, P.L. 1048. First, it

---

[22] It stated:

> The General Assembly may, by general law, provide a manner in which, and the time and place at which, *qualified war veteran voters*, who may, on the occurrence of any election, *be unavoidably absent* from the State or county of their residence *because of their being bedridden or hospitalized due to illness or physical disability contracted or suffered in connection with, or as a direct result of, their military service*, may vote and for the return and canvass of their votes in the election district in which they respectively reside.

PA. CONST. art. VIII, §18 (1949) (emphasis added).

23

repealed Article III, Section 6 of the 1874 Constitution and Article VIII, Section 18, which authorized those in military service and those with war injuries to vote by absentee ballot. These provisions were rendered redundant by Section 19, which extended absentee voting to any citizen whose absence was required by "occupation" or by an "illness or physical disability." Second, the Joint Resolution renumbered Article VIII, Section 19 to the current Article VII, Section 14, and it was revised to change the operative verb from "may" to "shall" as follows:

> The Legislature *shall*, by general law, provide a manner in which, and the time and place at which, *qualified electors* who may, on the occurrence of any election, be absent from the State or county of their residence, because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, *are unable to attend at their proper polling places* because of illness or physical disability, may vote, and for the return and canvass of their votes in the election district in which they respectively reside.

PA. CONST. art. VII, §14 (1967) (emphasis added). Third, the Joint Resolution renumbered the provision that a qualified elector must "offer to vote" in the election district where he resides, from Article VIII to Article VII, where it remains. PA. CONST. art. VII, §1.

In 1985, Article VII, Section 14 was amended to extend absentee voting to persons who could not vote in person due to a religious holiday or Election Day duties. As amended, Article VII, Section 14 stated as follows:

> The Legislature shall, by general law, provide a manner in which, and the time and place at which, qualified electors who may, on the occurrence of any election, be absent from the State or county of their residence, because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, are unable to attend at their proper polling places because of illness or physical disability *or who will not attend a*

24

*polling place because of the observance of a religious holiday or who cannot vote because of election day duties, in the case of a county employee*, may vote, and for the return and canvass of their votes in the election district in which they respectively reside.

PA. CONST. art. VII, §14 (1985) (emphasis added); Joint Resolution No. 3, 1984, P.L. 1307, and Joint Resolution No. 1, 1985, P.L. 555. Finally, in 1997, Article VII, Section 14 was amended to change "State or county" to "municipality" and to add subsection (b), which defines "municipality." PA. CONST. art. VII, §14; Joint Resolution No. 2, 1996, P.L. 1546, and Joint Resolution No. 3, 1997, P.L. 636.

Beginning in 1864, the Pennsylvania Constitution has provided an exception to the requirement that electors "attend at their proper polling places" on Election Day to exercise the franchise. The current version states that the legislature must provide a way for "qualified electors who may, *on the occurrence of any election,*" be absent from their residence or from their polling place to vote if their absence is for one of the enumerated reasons, *i.e.*, their duties, occupation or business; an illness or physical disability; the observance of a religious holiday; or Election Day duties. PA. CONST. art. VII, §14(a).

### D. Analysis

Since 1838, the Pennsylvania Constitution has required a qualified elector to appear at a polling place in the election district where he resides and on Election Day. This requirement was adopted "thereby to exclude disqualified pretenders and fraudulent voters of all sorts." *Chase*, 41 Pa. at 418. In 1864, an exception to the place requirement was introduced to the Constitution with the introduction of "absentee voting." Its very name, "absentee," relates back to the Section 1 requirement that electors vote in person at a polling place.

25

Our Supreme Court has specifically held that the phrase "offer to vote" requires the physical presence of the elector, whose "ballot cannot be sent by mail or express, nor can it be cast outside of all Pennsylvania election districts and certified into the county where the voter has his domicile." *Chase*, 41 Pa. at 419. There is no air in this construction of "offer to vote." There must be a constitutionally provided exception before the "offer to vote" requirement can be waived. Our Supreme Court has further directed that before legislation "be placed on our statute books" to allow qualified electors absent from their polling place on Election Day to vote by mail, "an amendment to the Constitution must be adopted permitting this to be done." *Lancaster City*, 126 A. at 201. This is our "fundamental law." *Id.*

In dismissing this construction of Article VII of our Constitution, the Acting Secretary places all emphasis on Article VII, Section 4, which states that elections shall be "by ballot or by such other method as may be prescribed by law." PA. CONST. art. VII, §4. The General Assembly, she argues, has nearly unbounded discretion to enact legislation except where specifically prohibited. Because there is no express prohibition in our Constitution against legislation establishing a new system of mail-in voting, it must be allowed. This logic was rejected in *Chase*, 41 Pa. at 409. The Acting Secretary does not grapple with the holdings in *Chase* and *Lancaster City*, which she considers hoary jurisprudence and not in line with the "modern" way constitutions are construed.[23] Acting Secretary Brief at 44. She is undeterred by the inconvenient truth that the provision authorizing "such other method as may be prescribed by law" was part of the Pennsylvania Constitution

---

[23] The Democratic Intervenors suggest that *Chase* and *Lancaster City* be overruled. Democratic Intervenors' Brief at 26. This is an argument that can be raised only to the Pennsylvania Supreme Court.

26

when *Lancaster City* was decided. In fact, the Supreme Court quoted the entire text of what is now Article VII, Section 4 in its opinion and explained that "this provision as to secrecy was likely added in view of the suggestion of the use of voting machines, yet the direction that privacy be maintained is now part of our fundamental law." *Lancaster City*, 126 A. at 201. The Acting Secretary does not believe there is a "place requirement" in Article VII, Section 1 and, thus, she does not consider Article VII, Section 14 to be an exception to the in-person voting requirement. For the reasons that follow, we reject the Acting Secretary's construction of Article VII, Sections 4 and 14.

First, the General Assembly must enact legislation within the bounds of the Pennsylvania Constitution.[24] The Constitution establishes the "fundamental law" against which the actions of all three branches of the Commonwealth government, including the work of the General Assembly, will be measured. *Lancaster City*, 126 A. at 201. The Constitution's fundamental law enables the General Assembly to legislate, and it restricts the exercise of the legislative prerogative in numerous ways, both substantively and procedurally. *See, e.g.*, PA. CONST. art. III, §§1 ("[N]o bill shall be so altered or amended, on its passage through

---

[24] The Acting Secretary notes that the Pennsylvania Supreme Court has stated that "[w]hat the people have not said in the organic law their representatives shall not do, they may do. . . . The Constitution allows to the Legislature every power which it does not positively prohibit." *William Penn School District v. Pennsylvania Department of Education*, 170 A.3d 414, 440 n.38 (Pa. 2017) (citations omitted). Congress is bound by the list of enumerated powers set forth in the United States Constitution; the General Assembly is not so bound. Nevertheless, this footnote goes on to state that the General Assembly must "stay[] within constitutional bounds" when it legislates. *Id.* "Constitutional bounds" occur in different ways. For example, Article VII, Section 1 sets a voting age of 21 years, but this age has been preempted by federal law. The bounds may also be found in the "fundamental law" of the Pennsylvania Constitution. The question here is whether the legislature's enactment of no-excuse mail-in voting has stayed within the bounds of Article VII of the Pennsylvania Constitution.

27

either House, as to change its original purpose."), 3 ("No bill shall be passed containing more than one subject[.]"), 4 ("Every bill shall be considered on three different days in each House.").

Second, there is nothing fusty about the holdings in *Chase* and *Lancaster City*. They are clear, direct, leave no room for "modern" adjustment and are binding. The Democratic Intervenors argue that because the Supreme Court did not provide a sufficiently penetrating analysis of Article VII, Section 4, *Lancaster City* has no precedential effect. We reject this legerdemain. The Supreme Court quoted the text of Section 4 in full and then stated that its purpose was to allow voting machines and to maintain secrecy in voting as "part of our fundamental law." *Lancaster City*, 126 A. at 201. More to the point, the Supreme Court quoted and addressed the same three provisions of the Constitution we review here, and concluded, decisively, that they prohibited the enactment of legislation to permit qualified electors absent from their polling place on Election Day to vote, except for reasons enumerated in the Pennsylvania Constitution. *Id.*

*Lancaster City* is binding precedent that has informed election law in Pennsylvania for nearly 100 years. It has provided the impetus for the adoption of multiple amendments to the Pennsylvania Constitution that were each considered the necessary first step to any expansion of absentee voting. *See, e.g.*, Joint Resolution No. 3, 1997, P.L. 636. Moreover, the rulings in *Chase* and *Lancaster City* have been followed over the years in numerous election cases. For example, in *In re Franchise of Hospitalized Veterans*, 77 Pa. D. & C. 237, 240 (1952), the court quoted *Lancaster City* for the proposition that "article VIII of the Constitution of 1874, with its amendments, sets up the requirements of a citizen to obtain the right to vote," which include express limits on absentee voting. Similarly, in *In re*

28

*Election Instructions*, 2 Pa. D. 299, 300 (1888), the court stated that "the offer to vote is an act wholly distinct from a qualification. Judge Woodward says: '*To offer to vote* by ballot is to present oneself with proper qualifications at the time and place appointed, and to make manual delivery of the ballot to the officers appointed to receive it.' *See Chase v. Miller*, 41 Pa. 419." (Emphasis in original.) In sum, the viability of *Chase* and *Lancaster City* has never flagged.

Third, Article VII, Section 4 cannot be read, as suggested by the Acting Secretary, to authorize a system of no-excuse mail-in voting to be conducted from any location. To begin, "such other method" is limited to one that is "prescribed by law." PA. CONST. art. VII, §4. This prescription includes the "fundamental law" that voting must be in person except where there is a specific constitutional exception. PA. CONST. art. VII, §§1, 14. We reject the suggestion that "the law" in Section 4 refers only to the legislature's work product and not to the Pennsylvania Constitution. Further, the Supreme Court could have, but did not, state that "such other method" included voting by mail, a system in existence and used for military absentee voting at the time *Lancaster City* was decided.[25] Instead, the Supreme

---

[25] The first Pennsylvania statute on military voting provided that a soldier "who may attend, vote, or offer to vote" in the field was subject to the provisions of the "election laws . . . , so far as practicable." Section 27 of the Act of August 25, 1864, P.L. 990 (Soldiers' Voting Act of 1864). After voting in a polling place in the field, the soldier deposited his ballot into a sealed envelope with a statement attested by a "commissioned officer" that the soldier will "not offer to vote at any poll, which may be opened on said election day," and is not a deserter and that provided the location where "he is now stationed." *Id.* at Section 33. The ballot was then mailed to an identified elector, who delivered the soldier's ballot envelope to an election officer in the soldier's "proper district on the day of the election." *Id.* at Section 34.

The Soldiers' Voting Act of 1864 used the terms "attend" and "offer to vote" to describe in-person voting at the military polling place. The 1864 act sought to replicate in-person voting so far as practicable, recognizing that in-person voting at the elector's polling place is the polestar.

Court stated that "such other method" authorized the use of mechanical devices at the polling place. *Lancaster City*, 126 A. at 201.

The better reading of Section 4 is that "such other method" refers to an alternative to a paper ballot for use at the polling place. This is consistent with the ruling in *Wintermute*, 86 N.E. at 819, that construed the addition of "such other method" to the New York Constitution as "solely to enable the substitution of voting machines, if found practicable[.]" Notably, the New York Court of Appeals' holding is contemporaneous with Pennsylvania's 1901 addition of this phrase to the Pennsylvania Constitution.[26] Thereafter, our Supreme Court gave Section 4 this same construction in *Lancaster City*, 126 A. at 201. Other courts have consistently observed that "[t]he only method of permitted voting, other than ballot, is by voting machine." *In re General Election of November 4, 1975*, 71 Pa. D. & C. 2d at 91.

Finally, in his treatise, Judge Woodside has explained that Article VII, Section 4 was intended to allow "the use of voting machines and other mechanical devices." WOODSIDE at 465. He further opined on the meaning of Article VII, Section 4 as follows:

> Although ballots were used exclusively for elections in the *early years* of this century and are still used in a few rural areas, voting machines gradually became the customary method of casting and counting votes. *More modern methods are presently being tested and suggested.* The laws on the methods to be used are likely to be changed from time to time by the General Assembly as *science improves ways which preserve the secrecy but are more*

---

[26] New York's legislature did not consider "such other method" to authorize its enactment of a no-excuse mail-in voting system. In November of 2021, the citizens of New York rejected a proposal to amend the New York Constitution to authorize "No-Excuse Absentee Ballot Voting." *See* 2021 New York Statewide Ballot Proposal No. 4, *available at*: https:///www.elections.ny.gov/2021Ballotproposals.html (last visited January 27, 2022) (not passed) (proposing an amendment to section 2 of article II of the constitution in relation to authorizing ballot by mail by removing cause for absentee ballot voting).

*efficient for voting and counting*. The *secrecy* in voting undoubtedly will be protected by the courts just as they have carefully guarded it in the past.

WOODSIDE at 470 (emphasis added). The phrase "such other method" of voting is not limited to mechanical devices known in 1901; it is broad enough in scope to allow devices yet to be invented that "preserve secrecy but are more efficient." *Id*. However, an "other method" authorized in Article VII, Section 4 refers to a type of voting that takes place at the polling place, so long as it preserves secrecy.[27]

To read Section 4 as an authorization for no-excuse mail-in voting is wrong for three reasons. First, no-excuse mail-in voting uses a paper ballot and not some "other method." Second, this reading unhooks Section 4 from the remainder of Article VII as well as its historical underpinnings. It ignores the in-person place requirement that was made part of our fundamental law in 1838. PA. CONST. art. VII, §1. Third, it renders Article VII, Section 14 surplusage. The Acting Secretary's interpretation of "such other method" means that the legislature always had the authority to extend absentee voting to every elector, in any circumstance, and *Lancaster City* was dead wrong in holding that before an expansion to absentee voting could be placed on the "statute books," there must be a constitutional amendment to authorize that expansion.

Finally, we reject the Acting Secretary's premise that the 1968 Constitution ushered in a new age for the conduct of elections in Pennsylvania. As Judge Woodside has observed, what we call the "1968 Constitution" resulted from a process of incorporation of, and amendment to, our first Constitution of 1776.

---

[27] Voters may tell the world how they voted. However, when they cast their vote they must "retire to one of the voting shelves or compartments" to prepare their ballot. *De Walt*, 24 A. at 188. Assistance is prohibited.

31

Conventions produced what have been designated as the Constitutions of 1790, 1838, 1874, and 1968, but these yearly "designations are for convenience only as *the* Constitution of Pennsylvania has been amended, *not replaced and not readopted*, by the proposals of the last four conventions." WOODSIDE at 7 (emphasis added). Simply, where language has been retained, this has been done advisedly in order to retain the original meaning.

"Offer to vote" has been part of the Pennsylvania Constitution since 1838 and has been consistently understood, since at least 1862, to require the elector to appear in person, at a "proper polling place" and on Election Day to cast his vote. The ability to vote at another time and place, *i.e.*, absentee voting, requires specific constitutional authorization. Accordingly, the absentee voting authorization has been extended in small steps from those in active military service to those war veterans whose injuries require residency outside their election district and, then, to civilians who may still reside in their election district but are unable to "attend" to the polls on Election Day because of incapacity, illness or disability. The most recent amendment, in 1997, added observance of a religious holiday or Election Day duties. Each painstaking amendment to the absentee voting requirement in Section 14 was unnecessary, according to the Acting Secretary, after 1901 when Section 4 was amended.

The 1968 changes to Article VII were minor. They did not eliminate the constitutional requirement of in-person voting or the need for a constitutional provision to authorize an exception to in-person voting. Judge Woodside, a delegate to the constitutional convention that produced the 1968 Constitution, explains Article VII, Section 14 as follows:

> This provision requires that a voter by absentee ballot be a "qualified elector" and (a) absent from the county of residence

32

because his duties, occupation or business required him to be absent; [or] (b) unable to attend the polling place because of illness or physical disability. The statutory law provides in detail the process of obtaining the counting of absentee ballots.

An amendment to this section will be submitted to the electorate in November, 1985. It would add subsequently to "physical disability" the following: or who will not attend a polling place because of the observance of a religious holiday or who cannot vote because of election day duties, in the case of a county employee.

WOODSIDE at 473-74. Stated otherwise, Section 14 established the rules of absentee voting as both a floor and a ceiling. Were it exclusively a floor, then the 1985 pending constitutional amendment of which Woodside writes was unnecessary.

It is striking how many times Article VII, Section 14, and its antecedents, refer to "proper polling places." PA. CONST. art. VII, §14. The 1864 Constitution used the phrase that soldiers voting *in absentia* would treat their ballots "as if they were present at their usual places of election." PA. CONST. art. III, §4 (1864). Also appearing in the absentee voting provision is the phrase "unavoidably absent from the State or county of their residence." PA. CONST. art. VIII, §19 (1957). Section 14 can only be understood as an exception to the rule established in Article VII, Section 1 that a qualified elector must present herself at her proper polling place to vote on Election Day, unless she must "be absent" on Election Day for the reasons specified in Article VII, Section 14(a). PA. CONST. art. VII, §14(a).

The 1968 change from "may" to "shall" in Article VII, Section 14 does not affect this analysis, as suggested by the Acting Secretary. "May" is generally understood to be directory, and "shall" is generally understood to be mandatory. *In re Canvass of Absentee Ballots of November 4, 2003 General Election*, 843 A.2d 1223, 1231 (Pa. 2004) ("The word 'shall' carries an imperative or mandatory

33

meaning."). However, it has been observed that "there are provisions in nearly every constitution which from the nature of things must be construed to be directory, for example, sections commanding the legislature to pass laws of a particular character, as to redistrict the state into senatorial or representative districts at stated periods." Thomas Raeburn White, Commentaries on the Constitution of Pennsylvania, at 24-25 (1907) (WHITE). Here, the legislature has fulfilled its duty; it has provided a "manner" by which qualified electors unable to attend at their proper polling places for a constitutionally accepted reason "may vote." PA. CONST. art. VII, §14(a)

Section 4 and Section 14 address different concerns. Section 4 incorporated the terms of the Baker Ballot Law into our fundamental law to ensure elections were conducted free of coercion and fraud. Section 14 addresses the concern that some electors physically unable to "attend at their proper polling places" should not be denied the franchise. Section 14 resolves the tension between the constitutional requirement of in-person voting and the need to waive that requirement in appropriate circumstances. FORTIER & ORNSTEIN at 498. Section 4 did not supplant the need for the exceptions in Section 14, as the Acting Secretary suggests.

*Chase* and *Lancaster City* have not lost their precedential weight over the course of time. They have the "rigor, clarity and consistency" that one expects for the application of *stare decisis*. *William Penn School District*, 170 A.3d at 457. We reject the strained argument of the Acting Secretary and the Democratic Intervenors that in *Lancaster City* the Supreme Court did not give close enough consideration to Article VII, Section 4. It did consider and construe its meaning. Rather, it is the Acting Secretary that gives inadequate attention to our fundamental law that the legislature may not excuse qualified electors from exercising the

34

franchise at their "proper polling places" unless there is first "an amendment to the Constitution … permitting this to be done." *Lancaster City*, 126 A. at 201.

The 1901 amendment authorizing "such other method" of voting at the polling place did not repeal the in-person voting requirement in Section 1, which created the "entitlement" to vote as well as the prerequisites therefor.[28] Our Constitution allows the requirement of in-person voting to be waived where the elector's absence is for reasons of occupation, physical incapacity, religious observance, or Election Day duties. PA. CONST. art. VII, §14(a). Because that list of reasons does not include no-excuse absentee voting, it is excluded. *Page v. Allen,* 58 Pa. 338, 347 (1868); *Lancaster City*, 126 A. at 201. An amendment to our Constitution that ends the requirement of in-person voting is the necessary prerequisite to the legislature's establishment of a no-excuse mail-in voting system.

## IV. Acting Secretary's Procedural Objections to McLinko's Petition for Review

The Acting Secretary argues that the Court need not - and cannot - reach the question of whether Act 77 can be reconciled with Article VII of the Pennsylvania Constitution. She asserts that McLinko's petition for review was untimely filed and, further, McLinko lacks standing to initiate this action, even if his petition had been timely filed. We address each procedural objection.

### A. Standing

In her challenge to McLinko's standing to challenge the constitutionality of Act 77, the Acting Secretary asserts that McLinko's duties under the Election Code do not give him a substantial or particularized interest in

---

[28] The Acting Secretary notes that Section 1 merely qualifies voters as stated in the title. However, "[n]o attention will be paid to the captions of the articles or section. They are inserted only for convenience." WHITE at 13 (citing *Houseman v. Commonwealth ex rel. Tener*, 100 Pa. 222 (1882)). In any case, the Supreme Court has explained that Section 1 both qualifies the elector and "compel[s] him to offer his vote in the appropriate ward or township." *Chase*, 41 Pa. at 418.

the statute's constitutionality. McLinko responds that as a member of the Bradford County Board of Elections he holds an interest that is separate from the interest that every Pennsylvania citizen has in statutes that conform to the Pennsylvania Constitution. Alternatively, he meets the test for taxpayer standing.

A party seeking judicial resolution of a controversy must establish a "substantial, direct, and immediate" interest in the outcome of the litigation. *Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016). An interest is "substantial" if the party's interest "surpasses the common interest of all citizens in procuring obedience to the law." *Firearm Owners Against Crime v. City of Harrisburg*, 218 A.3d 497, 506 (Pa. Cmwlth. 2019) (quoting *Phantom Fireworks Showrooms, LLC v. Wolf,* 198 A.3d 1205, 1215 (Pa. Cmwlth. 2018)). A "direct" interest requires a causal connection between the matter complained of and the party's interest. *Id*. Finally, an "immediate" interest requires a causal connection that is neither remote nor speculative. *Id*. The key is that the party claiming standing must be "negatively impacted in some real and direct fashion." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa. 2005).

McLinko argues that as an elected member of the Bradford County Board of Elections he meets these standards. In that role, he must make a host of judicial, quasi-judicial, and executive judgments, which include "issuing rules and regulations under the [E]lection [C]ode[;] investigating claims of fraud, irregularities, and violations of the [E]lection [C]ode[;] issuing subpoenas[;] determining the sufficiency of nomination petitions[;] ordering recounts or recanvassing of votes[;] and certifying election results." McLinko Reply Brief at 3 (citing Sections 302, 304, 1401, 1404 and 1408 of the Election Code, 25 P.S. §§2642, 2644, 3151, 3154, 3158). McLinko argues that the standing of a public

36

official to challenge the constitutionality of a statute that the public official must administer and implement was established in *Robinson Township v. Commonwealth*, 52 A.3d 463 (Pa. Cmwlth. 2012), *aff'd in part*, *rev'd in part sub nom. Robinson Township*, *Washington County v. Commonwealth*, 83 A.3d 901 (Pa. 2013).

The Acting Secretary responds that McLinko's duty to carry out the Election Code does not encompass challenging the Election Code's constitutionality. Further, because a board of elections is a multi-member body, it can act only through a majority of its members. As such, McLinko does not have standing in his own right.

As McLinko correctly observes, the Election Code requires a board of elections to promulgate regulations, issue subpoenas, conduct hearings on the conduct of primaries and elections and certify election results. Section 304 of the Election Code, 25 P.S. §2644. In *Robinson Township*, 52 A.3d at 476, this Court considered whether one member of a borough council and one member of a board of supervisors had standing to challenge the constitutionality of a statute that restricted their official actions.[29] This Court held that because the petitioners were "local elected officials acting in their official capacities for their individual municipalities and being required to vote for zoning amendments they believe are unconstitutional," they had an interest sufficient to confer standing. *Id.* Likewise, McLinko is required to count ballots and certify election results that he believes are

---

[29] Brian Coppola, a Supervisor of Robinson Township, and David M. Ball, a Councilman of Peters Township, brought suit against the Commonwealth individually and in their official capacities as elected officials in their respective municipalities. They contended that they would be required to vote on the passage of zoning amendments to comply with Act 13 of 2012, 58 Pa. C.S. §§2301-3504, which amended the Oil and Gas Act to require municipal zoning ordinances to be amended to include oil and gas operations in all zoning districts.

37

unconstitutional. As in *Robinson Township*, this dilemma confers standing on McLinko as an elected official, and he does not need the participation of his entire board to demonstrate his standing. *Id.* at 475 (standing granted to individual supervisor of Robinson Township and individual councilman of Peters Township). *See also Fumo v. City of Philadelphia*, 972 A.2d 487 (Pa. 2009) (single member of General Assembly, a body that can only act through majority vote, had standing to challenge ordinance as unconstitutional).

Nevertheless, the Acting Secretary directs the Court to *In re Administrative Order No. 1-MD-2003 (Appeal of Honorable James P. Troutman)*, 936 A.2d 1 (Pa. 2007) (*Troutman*). In that case, a clerk of courts challenged the legality of an administrative order issued by the court's president judge directing the clerk to seal certain records in his custody. The Supreme Court acknowledged that the clerk of courts had a constitutional duty to make court records available to the public but observed that these duties were purely ministerial. The clerk of courts' "interest" in the merits of an administrative order of the court was the same as that of any other citizen. *Troutman*, 936 A.2d at 9. Accordingly, the Supreme Court held that the clerk of courts lacked standing.

*Troutman* is distinguishable. First, as the concurring opinion of Justice Saylor pointed out, there is a "tenuous relationship between [the clerk's] legal obligations and the statute at issue [(Criminal History Record Information Act, 18 Pa. C.S. §§9101-9183)]." *Troutman*, 936 A.2d at 11 (Saylor, J., concurring). Here, by contrast, the relationship between McLinko's legal obligations and the Election Code is direct, not tenuous. Second, *Troutman* concerned an administrative order of the court and not a statutory duty, as here and in *Robinson Township*. Third, our Supreme Court has held that the Election Code makes a county board of elections

38

"more than a mere ministerial body. It clothes [the board] with quasi-judicial functions," such as the power to "issue subpoenas, summon witnesses, compel production of books, papers, records and other evidence, and fix the time and place for hearing any matters relating to the administration and conduct of primaries and elections." *Appeal of McCracken*, 88 A.2d 787, 788 (Pa. 1952) (citation omitted).

Given McLinko's responsibilities under the Election Code, it is difficult to posit a petitioner with a more substantial or direct interest in the constitutionality of Act 77's amendments to the Election Code.

Even so, this case presents the special circumstances where taxpayer standing may be invoked to challenge the constitutionality of governmental action. The Pennsylvania Supreme Court has established that a grant of taxpayer standing is appropriate where (1) governmental action would otherwise go unchallenged; (2) those directly affected are beneficially affected; (3) judicial relief is appropriate; (4) redress through other channels is not appropriate; and (5) no one else is better positioned to assert the claim. *Application of Biester*, 409 A.2d 848 (Pa. 1979). McLinko meets all five requirements. Because the Acting Secretary has not challenged the constitutionality of Act 77, it may go unchallenged if McLinko is denied standing.

In *Sprague v. Casey*, 550 A.2d 184 (Pa. 1998), a taxpayer challenged the special election to fill one seat on the Supreme Court and one seat on the Superior Court scheduled for the General Election of November 1998.[30] The respondents argued that the taxpayer lacked standing because the governmental action he

---

[30] Judges are to be elected at municipal elections held in odd-numbered years. Article V, Section 13(b) and Article VII, Section 3 of the Pennsylvania Constitution, PA. CONST. art. V, §13(b) and art. VII, §3. Judicial vacancies are to be filled by election only when they occur more than 10 months before the municipal election. Article V, Section 13(b) of the Pennsylvania Constitution, PA. CONST. art. V, §13(b).

39

challenged did not substantially or directly impact him. The Supreme Court determined that taxpayer standing under *Biester* was warranted because the "election would otherwise go unchallenged because respondents are directly and beneficially affected" but chose not to initiate legal action. *Id.* at 187. The Court explained that "[j]udicial relief is appropriate because the determination of the constitutionality of the election is a function of the courts . . . and redress through other channels is unavailable." *Id.* (citation omitted).

We reject the challenge of the Acting Secretary and the Democratic Intervenors to McLinko's standing to initiate an action to challenge the constitutionality of Act 77's system of no-excuse mail-in voting.

### B. Timeliness of McLinko's Petition for Review

The Acting Secretary next contends that McLinko's petition for review was untimely filed and, thus, should be dismissed. She argues, first, that his petition is barred by the doctrine of laches and, second, by the so-called statute of limitations in Act 77 requiring constitutional challenges to the act to be filed within 180 days of the statute's effective date, or April 28, 2020. McLinko's petition was filed in July of 2021.

### 1. Doctrine of Laches

Laches is an equitable defense[31] that can result in the dismissal of an action where the plaintiff has been dilatory in seeking relief and the delay has prejudiced the defendant. *Commonwealth ex rel. Baldwin v. Richard*, 751 A.2d 647, 651 (Pa. 2000); *Smires v. O'Shell*, 126 A.3d 383, 393 (Pa. Cmwlth. 2015). A defendant can establish prejudice from the passage of time by offering evidence that

---

[31] "Because laches is an affirmative defense, the burden of proof is on the defendant or respondent to demonstrate unreasonable delay and prejudice." *Pennsylvania Federation of Dog Clubs v. Commonwealth*, 105 A.3d 51, 58 (Pa. Cmwlth. 2014).

he changed his position with the expectation that the plaintiff has waived his claim. *Baldwin*, 751 A.2d at 651. The question of laches is factual and is determined by examining the circumstances of each case. *Sprague*, 550 A.2d at 188.

The Acting Secretary relies upon *Kelly v. Commonwealth*, 240 A.3d 1255 (Pa. 2020).[32] *Kelly* was filed several weeks after the 2020 General Election and challenged the constitutionality of Act 77. There, the petitioners "sought to invalidate the ballots of the millions of Pennsylvania voters who utilized the mail-in voting procedures established by Act 77," believing those votes were illegal. *Kelly*, 240 A.3d at 1256. In addition to seeking the disenfranchisement of "6.9 million Pennsylvanians who voted in the General Election," the petitioners sought to "direct the General Assembly to choose Pennsylvania's electors." *Id*. (footnote omitted).

The Supreme Court dismissed the petition on the basis of laches. It held that the petitioners were dilatory because they waited until days before the county boards of elections were required to certify the election results to the Secretary of the Commonwealth to file their action. Moreover, they did not file their action until the election results were "seemingly apparent." *Id*. at 1256-57. The Supreme Court held that the "disenfranchisement of millions of Pennsylvania voters" established "substantial prejudice." *Id*. at 1257. It further held that to disenfranchise citizens whose only error was relying on the Commonwealth's instructions was fundamentally unfair, and the request to void an election was

---

[32] *Kelly* is a *per curiam* order. In *Cagey v. Commonwealth*, 179 A.3d 458, 467 (Pa. 2018) (citation omitted), the Supreme Court explained that "'the legal significance of *per curiam* decisions is limited to setting out the law of the case' and that such decisions are not precedential, even when they cite to binding authority." The Acting Secretary concedes that *Kelly* is "technically not binding precedent" but nevertheless argues that it is "on all fours with this case" because it involved an identical constitutional claim and was decided by the very justices who currently sit on the Supreme Court. Acting Secretary Brief at 23 n.10. We disagree that *Kelly* is "on all fours."

41

declared "a drastic if not staggering remedy" that was quickly dismissed. *Id*. at 1259 (Wecht, J., concurring) (citations omitted).

McLinko filed his petition in July of 2021, between elections, and sought expedited relief "in sufficient advance" of the November 2021 General Election so that electors would not have their votes disqualified. Application for Expedited Briefing and Summary Relief, ¶6.[33] There is no risk of disenfranchisement of one vote, let alone millions, as was the case in *Kelly*. The critical difference between *Kelly* and this case is that McLinko is seeking prospective relief, *i.e.*, a determination as to the constitutionality of Act 77 for future elections.

Nevertheless, the Acting Secretary and Democratic Intervenors assert that the doctrine of laches should apply because McLinko did not file his action until two years after the enactment of Act 77 and three subsequent elections. As a member of a board of elections, McLinko cannot claim a lack of knowledge as justification for not bringing his claims sooner. Invalidating Act 77 after two election cycles would cause "profound prejudice" because of the funding and effort dedicated to the implementation of mail-in voting. Acting Secretary's Brief at 24. More than 1.38 million Pennsylvania electors have requested to be placed on a permanent mail-in ballot list, and the elimination of this list would result in confusion and impose a burden upon state and local governments.

The government's investment of resources to implement a statute is irrelevant to the analysis of the statute's constitutionality. In *Commonwealth ex rel.*

---

[33] In his application for summary relief, McLinko sought a "speedy declaration" from this Court to allow any person that planned on voting by mail to arrange to vote in person on November 2, 2021, or by absentee ballot if qualified as an absentee voter under the Pennsylvania Constitution. Application for Expedited Briefing and Summary Relief, ¶7. This Court concluded that prospective relief in advance of the November 2021 election was impossible because the election was underway by the time argument was held on the summary relief applications.

*Fell v. Gilligan*, 46 A. 124, 125 (Pa. 1900), the Supreme Court observed that expenditures of "millions of dollars of school funds" for 25 years under the provisions of a statute were not reasons "for refusing to declare [the statute] void if in contravention of the constitution." Our Supreme Court has further explained that "laches and prejudice can never be permitted to amend the Constitution." *Sprague*, 550 A.2d at 188. In *Wilson v. School District of Philadelphia*, 195 A. 90, 99 (Pa. 1937), our Supreme Court explained, with emphasis added:

> We have not been able to discover any case which holds that laches will bar an attack upon the constitutionality of a statute as to its future operation, *especially where the legislation involves a fundamental question going to the very roots of our representative form of government and concerning one of its highest prerogatives*. To so hold would establish a dangerous precedent, the evil effect of which might reach far beyond present expectations.

The question of Act 77's constitutionality is a question that goes to the "very roots of our representative form of government." *Id.* Constitutional norms outweigh the cost of implementing unconstitutional statutes.

This is not the first challenge to the constitutionality of a statute to be filed years after its enactment. *See, e.g.*, *League of Women Voters of Pennsylvania v. Commonwealth*, 178 A.3d 737 (Pa. 2018) (constitutional challenge to state's congressional redistricting legislation brought six years and multiple elections after its 2011 enactment); *Peake v. Commonwealth*, 132 A.3d 506, 521 (Pa. Cmwlth. 2015) (challenge filed in 2015 to constitutionality of 1996 amendment to the Older

Adults Protective Services Act[34] imposing a lifetime ban on persons with a single conviction from employment in the care of older adults).

For these reasons, we hold that the doctrine of laches does not bar McLinko's challenge to the constitutionality of Act 77.

**2. Section 13 of Act 77 Time Bar**

Alternatively, the Acting Secretary argues that McLinko's petition must be dismissed because the legislature has required that challenges to the mail-in voting provisions of Act 77 be brought within 180 days of its enactment. *See* Section 13 of Act 77. In support, she offers precedent that she claims authorizes a legislature to set a time bar to the challenge of a statute's constitutionality. *See, e.g.*, *Turner v. People of State of New York*, 168 U.S. 90 (1897) (New York statute with six-month statute of limitations to challenge tax sale of property for nonpayment of taxes held constitutional); *Block v. North Dakota*, *ex rel. Board of University and School Lands*, 461 U.S. 273 (1983) (federal statute with 12-year statute of limitations to file land title action land against United States government held not to violate Tenth Amendment, U.S. CONST., amend. X); *Dugdale v. United States Customs and Border Protection*, 88 F. Supp. 3d 1 (D.D.C. 2015) (federal statute with 60-day statute of limitations to challenge removal order held not to violate due process or the Suspension Clause of Article I of the United States Constitution, U.S. CONST. art. I); *Greene v. Rhode Island*, 398 F.3d 45 (1st Cir. 2005) (federal statute with 180-day statute of limitations for Native Americans to assert land claim held not to violate due process); *Native American Mohegans v. United States*, 184 F. Supp. 2d 198 (D. Conn. 2002) (federal statute providing 180-day statute of limitations for Native Americans to assert land claim held not to violate due process or separation

_____

[34] Act of November 6, 1987, P.L. 381, *as amended*, 35 P.S. §§10225.101-10225.5102.

of powers); *Cacioppo v. Eagle County School District Re-50J*, 92 P.3d 453 (Colo. 2004) (Colorado statute providing a five-day statute of limitations to challenge ballot titles held not to violate Colorado Constitution).

This precedent is irrelevant. Not a single case cited by the Acting Secretary stands for the proposition that a legislature can prevent judicial review of a statute, whose constitutionality is challenged, with a statute of limitations of any duration. This is because, simply, an unconstitutional statute is void *ab initio*.

A statute of limitations is procedural and extinguishes the remedy rather than the cause of action.[35] McLinko seeks clarity on whether Act 77 comports with the Pennsylvania Constitution, and the General Assembly did not impose a time bar for seeking this clarity.

To begin, Section 13 of Act 77 does not establish a statute of limitations for instituting a constitutional challenge to Act 77. It states:

> (2) *The Pennsylvania Supreme Court has exclusive jurisdiction to hear a challenge to or to render a declaratory judgment concerning the constitutionality of a provision referred to in paragraph (1)* [including Article XIII-D of the Election Code that provides for mail-in voting]. The Supreme Court may take action it deems appropriate, consistent with the Supreme Court retaining jurisdiction over the matter, to find facts or to expedite a final judgment in connection with such a challenge or request for declaratory relief.

---

[35] A statute of limitations is an affirmative defense that is properly raised in new matter, rather than in preliminary objections, and it cannot be raised in a demurrer, unless the particular statute of limitations is nonwaivable. PA.R.CIV.P. 1030(a); *Devine v. Hutt*, 863 A.2d 1160, 1167 (Pa. Super. 2004); *City of Warren v. Workers' Compensation Appeal Board (Haines)*, 156 A.3d 371, 377 (Pa. 2017).

45

(3) An action under paragraph (2) must be commenced within 180 days of the effective date of this section.

Section 13 of Act 77 (emphasis added). This provision addresses subject matter jurisdiction and does not state a statute of limitations.

Act 77 gave the Pennsylvania Supreme Court exclusive jurisdiction to hear challenges to the enumerated provisions of Act 77 for the first 180 days after enactment. Thereafter, such constitutional challenges reverted to this Court in accordance with the Judicial Code. 42 Pa. C.S. §761(a)(1).[36] Notably, the Acting Secretary does not assert this Court lacks subject matter jurisdiction over McLinko's action. The Supreme Court had exclusive jurisdiction to entertain constitutional challenges to certain sections of Act 77 for the first 180 days, or until April 28, 2020, and its exclusive jurisdiction terminated as of that day. Section 13 of Act 77 is not a statute of limitations.

Lest there be any doubt, Section 13 has been treated as a provision on subject matter jurisdiction, not a statutory time bar. In *Delisle v. Boockvar*, 234 A.3d 410 (Pa. 2020), the Supreme Court by *per curiam* order dismissed a petition for review that had been filed after April 28, 2020, and transferred the case to this Court. In a concurrence, Justice Wecht explained that "[t]he statute that conferred exclusive original jurisdiction upon this Court to hear constitutional challenges revoked that jurisdiction at the expiration of 180 days, and there is no question that [p]etitioners

---

[36] It states, in relevant part:

    (a) General rule.**--**The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

        (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity[.]

42 Pa. C.S. §761(a)(1). The exceptions to the general rule in Section 761(a)(1) are not applicable here.

herein filed their petition outside of that time limit." *Id.* at 411 (Wecht, J., concurring). Though *Delisle* was a *per curiam* order, and therefore not binding precedent, this Court has also independently stated that Section 13 is an exclusive jurisdiction provision. *See Crossey v. Boockvar* (Pa. Cmwlth., No. 266 M.D. 2020, filed September 4, 2020), Recommended Findings of Fact and Conclusions of Law at 2 n.3 (stating that the Supreme Court had "exclusive jurisdiction if a challenge was brought within 180 days of Act 77's effective date").

The General Assembly cannot insulate Act 77 from judicial review. As our Supreme Court has stated:

> Since *Marbury v. Madison*, 5 U.S. 137 . . . (1803), it has been well-established that the separation of powers in our tripartite system of government typically depends upon judicial review to check acts or omissions by the other branches in derogation of constitutional requirements. That same separation sometimes demands that courts leave matters exclusively to the political branches. *Nonetheless, "[t]he idea that any legislature . . . can conclusively determine for the people and for the courts that what it enacts in the form of law, or what it authorizes its agents to do, is consistent with the fundamental law, is in opposition to the theory of our institutions*."

*William Penn School District*, 170 A.3d at 418 (quoting *Smyth v. Ames*, 169 U.S. 466, 527 (1898)) (emphasis added); *Robinson Township*, 83 A.3d at 927 ("[I]t is the province of the Judiciary to determine whether the Constitution or laws of the Commonwealth require or prohibit the performance of certain acts.") (citation omitted). If the judiciary, upon review, determines that there are defects in the enactment of a statute, procedural or substantive, the court will void that enactment. *See Glen-Gery Corporation v. Zoning Hearing Board of Dover Township*, 907 A.2d 1033 (Pa. 2006) (holding that a statute requiring an ordinance challenge to be

47

brought within 30 days of the effective date where there were procedural defects in the enactment of the ordinance was unconstitutional and void).

We hold that McLinko's petition seeking prospective relief was timely filed. Section 13 did not establish a 180-day statute of limitations for bringing a constitutional challenge to Act 77. It could not do so without violating separation of powers. *William Penn School District*, 170 A.3d at 418 (legislature cannot "conclusively determine for the people and for the courts that what it enacts in the form of law … is consistent with the fundamental law").

## V. Conclusion

In *Chase*, the Supreme Court rejected Mr. Miller's argument that because the Pennsylvania Constitution did not contain a clause that "prohibits the legislature from passing a law authorizing soldiers to vote at their respective camps . . . the power may be exercised." 41 Pa. at 409. This prohibition was expressed in the antecedent to Article VII, Section 1, as our Supreme Court explained:

> The amendment so understood, introduced not only a new test of the right of suffrage, to wit, a district residence, but a rule of voting also. *Place became an element of suffrage* for a two-fold purpose. Without the district residence no man shall vote, but having had the district residence, the right it confers is to vote in *that district*. Such is the voice of the constitution.

*Chase*, 41 Pa. at 419 (emphasis added). Acknowledging the "hardship of depriving so meritorious a class of voters as our volunteer soldiers of the right of voting," the Supreme Court explained that "[o]ur business is to expound the constitution and laws of the country as we find them written. We have no bounties to grant to soldiers, or anybody else." *Id*. at 427-28. It further explained that while the soldiers "fight for the constitution, they do not expect judges to sap and mine it by judicial constructions." *Id*. at 428. The Court gave a "natural and obvious reading" to the

48

place element to suffrage set forth in Article VII, Section 1. *Chase*, 41 Pa. at 428. This Court is bound by *Chase* and *Lancaster City*, and we reject the strained construction of Article VII proffered by the Acting Secretary to avoid the clear directive of our Supreme Court.

No-excuse mail-in voting makes the exercise of the franchise more convenient and has been used four times in the history of Pennsylvania. Approximately 1.38 million voters have expressed their interest in voting by mail permanently. If presented to the people, a constitutional amendment to end the Article VII, Section 1 requirement of in-person voting is likely to be adopted. But a constitutional amendment must be presented to the people and adopted into our fundamental law before legislation authorizing no-excuse mail-in voting can "be placed upon our statute books." *Lancaster City*, 126 A. at 201.

For these reasons, we grant summary relief to McLinko and declare that Act 77 violates Article VII, Section 1 of the Pennsylvania Constitution, PA. CONST. art. VII, §1. We deny the Acting Secretary's application for summary relief on the procedural and substantive grounds proffered therein.[37]

_____
MARY HANNAH LEAVITT, President Judge Emerita

Former President Judge Brobson, Judge Covey, and former Judge Crompton did not participate in the decision in this case.

---

[37] As a result of our grant of summary relief to McLinko, the preliminary objections filed by the Acting Secretary and Democratic Intervenors are dismissed as moot.

49

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Doug McLinko,                          :  **CASES CONSOLIDATED**
                    Petitioner          :
                                        :
              v.                        :  No. 244 M.D. 2021
                                        :
Commonwealth of Pennsylvania,          :
Department of State; and               :
Veronica Degraffenreid, in her         :
official capacity as Acting Secretary  :
of the Commonwealth of Pennsylvania,   :
                    Respondents         :


Timothy R. Bonner, P. Michael Jones,   :
David H. Zimmerman, Barry J. Jozwiak,  :
Kathy L. Rapp, David Maloney,          :
Barbara Gleim, Robert Brooks,          :
Aaron J. Bernstine, Timothy F.         :
Twardzik, Dawn W. Keefer,              :
Dan Moul, Francis X. Ryan, and         :
Donald "Bud" Cook,                     :
                    Petitioners         :
                                        :
              v.                        :  No. 293 M.D. 2021
                                        :
Veronica Degraffenreid, in her official :
capacity as Acting Secretary of the    :
Commonwealth of Pennsylvania, and      :
Commonwealth of Pennsylvania,          :
Department of State,                   :
                    Respondents         :

# **O R D E R**

AND NOW, this 28th day of January, 2022, it is ORDERED that the application for summary relief filed by Petitioner Doug McLinko in the above-

captioned matter is GRANTED. The application for summary relief filed by Respondent Veronica Degraffenreid, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, is DENIED.

Additionally, the preliminary objections filed by Veronica Degraffenreid, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, and the Commonwealth of Pennsylvania, Department of State, and the preliminary objections filed by the Democratic National Committee and the Pennsylvania Democratic Party are DISMISSED as moot.

_____
MARY HANNAH LEAVITT, President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Doug McLinko, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 244 M.D. 2021 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of State; and | : | |
| Veronica Degraffenreid, in her | : | |
| official capacity as Acting Secretary | : | |
| of the Commonwealth of Pennsylvania, | : | |
| | : | |
| Respondents | : | |


| | | |
|---|---|---|
| Timothy R. Bonner, P. Michael Jones, | : | |
| David H. Zimmerman, Barry J. | : | |
| Jozwiak, Kathy L. Rapp, David | : | |
| Maloney, Barbara Gleim, Robert | : | |
| Brooks, Aaron J. Bernstine, Timothy F. | : | |
| Twardzik, Dawn W. Keefer, Dan | : | |
| Moul, Francis X. Ryan, and Donald | : | |
| "Bud" Cook, | : | |
| | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 293 M.D. 2021 |
| | : | Argued: November 17, 2021 |
| Veronica Degraffenreid, in her official | : | |
| capacity as Acting Secretary of the | : | |
| Commonwealth of Pennsylvania, and | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of State, | : | |
| | : | |
| Respondents | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge

CONCURRING AND DISSENTING OPINION
BY JUDGE WOJCIK                          FILED:        January 28, 2022

I agree with the Majority's scholarly opinion with respect to the issues of Petitioners' standing, and the procedural objections to the amended petitions for review. However, I disagree with the Majority's conclusion that Sections 1 and 8 of the Act of October 31, 2019, P.L. 552, No. 77 (Act 77) violate article VII, section 1 and section 14 of the Pennsylvania Constitution[1] by adding "a qualified mail-in

---

[1] Pa. Const. art. VII, §1. Article VII, section 1 states:

> Every citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact.
>
> 1. He or she shall have been a citizen of the United States at least one month.
>
> 2. He or she shall have resided in the State ninety (90) days immediately preceding the election.
>
> 3. He or she shall have resided in the election district where he or she shall offer to vote at least sixty (60) days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within sixty (60) days preceding the election.

In turn, article VII, section 14(a) provides, in relevant part:

> (a) The Legislature shall, by general law, provide a manner in which, and the time and place at which, qualified electors who may, on the occurrence of any election, be absent from the municipality of their residence, because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any

**(Footnote continued on next page…)**

MHW-2

elector" as a class of elector who is eligible to vote as defined in Section 102(z.5)(3) and (z.6) of the Pennsylvania Election Code (Election Code),[2] and by adding Section 1301-D of Article XIII-D to the Election Code[3] permitting any qualified elector, who is not eligible to be a qualified absentee elector, to vote by an official no-excuse

election, are unable to attend at their proper polling places because of illness or physical disability or who will not attend a polling place because of the observance of a religious holiday or who cannot vote because of election day duties, in the case of a county employee, may vote, and for the return and canvass of their votes in the election district in which they respectively reside.

Pa. Const. art. VII, §14(a).

[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §2602(z.5)(3), (z.6). Section 102(z.5)(3) of the Election Code provides that "[t]he words 'proof of identification' shall mean: . . . For a qualified absentee elector under Section 1301 or a qualified mail-in elector under section 1301-D." In turn, Section 102(z.6) states: "The words "qualified mail-in elector" shall mean a qualified elector."

[3] 25 P.S. §3150.11. Section 1301-D, added by Act 77, provides:

**(a) General rule.--**A qualified mail-in elector shall be entitled to vote by an official mail-in ballot in any primary or election held in this Commonwealth in the manner provided under this article.

**(b) Construction.--**The term "qualified mail-in elector" shall not be construed to include a person not otherwise qualified as a qualified elector in accordance with the definition in section 102(t).

In turn, Section 102(t) of the Election Code states:

The words "qualified elector" shall mean any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth, or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election.

25 P.S. §2602(t).

MHW-3

mail-in ballot in any primary, general, or municipal election held in this Commonwealth.

To the contrary, article VII, section 4 of the Pennsylvania Constitution specifically empowers the General Assembly to provide for another means by which an elector may cast a ballot through legislation such as Act 77. Specifically, article VII, section 4 states: "All elections by the citizens shall be by ballot *or by such other method as may be prescribed by law*: Provided, That secrecy in voting be preserved." Pa. Const. art. VII, §4 (emphasis added). Thus, the General Assembly is constitutionally empowered to enact Act 77 to provide for qualified and registered electors present in their municipality of residence on an election day to vote by no-excuse mail-in ballot. Specifically, I disagree with the Majority's faulty premise that the no-excuse mail-in ballot method of voting is merely a subspecies of voting by absentee ballot as provided in article VII, section 14, and that article VII, section 1 and article VII, section 14 have primacy over the provisions of article VII, section 4.

In reviewing the constitutionality of Act 77, it is important to remember:

> When faced with any constitutional challenge to legislation, we proceed to our task by presuming constitutionality in part because there exists a judicial presumption that our sister branches take seriously their constitutional oaths. *See* [Section 1922(3) of the Statutory Construction Act of 1972,] 1 Pa. C.S. §1922(3) ("In ascertaining the intention of the General Assembly in the enactment of a statute the . . . presumption [is] [t]hat the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth."); *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, [877 A.2d 383, 393 (Pa. 2005)] (hereinafter, "*PAGE*"). Indeed, a

> legislative enactment will not be deemed unconstitutional unless it clearly, palpably, and plainly violates the Constitution. *PAGE*, 877 A.2d at 393. "Any doubts are to be resolved in favor of a finding of constitutionality." *Payne v. Dep*[*artment*] *of Corrections*, [871 A.2d 795, 800 (Pa. 2005)]. Accordingly, a party challenging the constitutionality of a statute bears a very heavy burden of persuasion. *See Commonwealth v. Barud*, [681 A.2d 162, 165 (Pa. 1996)].

*Stilp v. Commonwealth*, 905 A.2d 918, 938-39 (Pa. 2006). Additionally, "'because the Constitution is an integrated whole, effect must be given to all of its provisions whenever possible.' Thus, where two provisions of our Constitution relate to the same subject matter, they are to be read in *pari materia*, and the meaning of a particular word cannot be understood outside the context of the section in which it is used." *Jubelirer v. Rendell*, 953 A.2d 514, 528 (Pa. 2008) (citation omitted).

Moreover, the Supreme Court's opinion in *In re Contested Election in Fifth Ward of Lancaster City*, 126 A. 199 (Pa. 1924) (*Lancaster City*), does not compel a different conclusion. In *Lancaster City*, the electors of the Fifth Ward in the City of Lancaster voted for a select councilman. The returns of the local board of elections showed that the Democratic and coalition candidate had received 869 of the votes, while the Republican candidate received 861. When the additional votes by absentee ballot, provided for by statute,[4] were counted, the Democratic candidate received an additional 3 votes, while the Republican candidate received an additional 20 votes thereby apparently winning the election. The statute expanding the scope of the constitutional provision permitting absentee voting was subsequently challenged as unconstitutional. In affirming a lower court's determination that the

---

[4] Act of May 22, 1923, P.L. 309. At that time, the constitutional provision permitting an elector to vote by absentee ballot, the former article VIII, section 6, was limited to electors who were outside their district of residence due to military service. *See In re Contested Election*, 126 A. at 200.

statute was, in fact, an unconstitutional statutory extension of the constitutional absentee voting provision, the Supreme Court stated:

> It will be noticed that the 'offer to vote' [in the present article VII, section 1] must still be in the district where the elector resides, the effect of which requirement is so ably discussed by Justice Woodward in *Chase v. Miller*, [41 Pa. 403 (1862)]. Certain alterations are made so that absent voting in the case of soldiers is permissible. This is in itself significant of the fact that this privilege was to be extended to such only.
>
> 'In construing particular clauses of the Constitution, it is but reasonable to assume that in inserting such provisions the convention representing the people had before it similar provisions in earlier Constitutions, not only in our own state but in other states which it used as a guide, and, in adding to, or subtracting from, the language of such other Constitutions the change was made deliberately and was not merely accidental.' *Com*[*monwealth*] *v. Snyder*, [104 A. 494, 495 (Pa. 1918)].
>
> The Legislature can confer the right to vote only upon those designated by the fundamental law, and subject to the limitations therein fixed. *McCafferty v. Guyer*, 59 Pa. 109 [(1868)]. The latter has determined those who, absent from the district, may vote other than by personal presentation of the ballot, but those so permitted are specifically named in [the former] section 6 of article 8. The old principle that the expression of an intent to include one class excludes another has full application here. White, in his work on the Constitution[,] succinctly sums up the proposition controlling this case when he says:
>
>> 'The residence required by the Constitution must be within the election district where the elector attempts to vote; hence a law giving to voters the right to cast their ballots at some place other than the election district in which they reside [is] unconstitutional.'

[Thomas Raeburn White, *Commentaries on the Constitution of Pennsylvania* 360 (1907).]

Other objections to the validity of the act now under consideration have been raised, but any detailed discussion is unnecessary. It may well be argued that the scheme of procedure fixed by the act of 1923, for the receipt, recording, and counting of the votes of those absent, who mail their respective ballots, would end in the disclosure of the voter's intention prohibited by the amendment [in the present article VII, section 4] of the Constitution, undoubtedly the result if but one vote so returned for a single district. Though this provision as to secrecy was likely added in view of the suggestion of the use of voting machines, yet the direction that privacy be maintained is now part of our fundamental law.

However laudable the purpose of the act of 1923, it cannot be sustained. If it is deemed necessary that such legislation be placed upon our statute books, then an amendment to the Constitution must be adopted permitting this to be done. For the reasons stated, the only assignment of error is overruled.

*Lancaster City*, 126 A. at 201.

Thus, *Lancaster City* merely stands for the proposition that the General Assembly may not by statute extend the scope of a method of voting already specifically provided for in article VII, section 14 of the Constitution. The Supreme Court's holding in that case in no way limits the authority conferred upon the General Assembly by article VII, section 4 to provide for a new and different method of voting such as the no-excuse mail-in ballot provisions of Act 77.

The Supreme Court's "suggested" limitation of article VII, section 4 in *Lancaster City* to the use of voting machines, and the Majority's assertion of the same herein, is undermined by the subsequent amendment of the present article VII, section 6 of our Constitution in 1928. As amended, article VII, section 6 now reads:

All laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the State, except that laws regulating and requiring the registration of electors may be enacted to apply to cities only, provided that such laws be uniform for cities of the same class, and except further, that *the General Assembly shall, by general law, permit the use of voting machines, or other mechanical devices for registering or recording and computing the vote, at all elections or primaries, in any county, city, borough, incorporated town or township of the Commonwealth, at the option of the electors of such county, city, borough, incorporated town or township*, without being obliged to require the use of such voting machines or mechanical devices in any other county, city, borough, incorporated town or township, under such regulations with reference thereto as the General Assembly may from time to time prescribe. The General Assembly may, from time to time, prescribe the number and duties of election officers in any political subdivision of the Commonwealth in which voting machines or other mechanical devices authorized by this section may be used.

Pa. Const. art. VII, §6 (emphasis added).[5]

Thus, if the provisions of article VII, section 4 are limited to the use of voting machines, as the Majority suggests, there was absolutely no need to amend article VII, section 6 to provide for the use of such machines at the option of local

---

[5] As this Court has explained:

Because the Pennsylvania Constitution reserves the power to provide, by general law, the use and choice of voting machines to the General Assembly, and the General Assembly has enacted [Section 302 of] the Election Code[, 25 P.S. §2642,] which delegates said power to the County's Board of Elections (Elections Board), the Election Code is the final authority on voting machines in this Commonwealth. Thus, the Elections Board has the exclusive control over election equipment.

*See also In re Agenda Initiative to Place on the Agenda of a Regular Meeting of County Council*, 206 A.3d 617, 624 (Pa. Cmwlth. 2019).

municipalities. Moreover, the Majority's limited construction of article VII, section 4 renders the phrase "or by such other method as may be prescribed by law" meaningless and mere surplusage in light of the amendment to article VII, section 6 to specifically include the use of voting machines as a new and different method of casting a ballot. Thus, contrary to the Supreme Court's observation in *Lancaster City*, and the Majority's conclusion herein, article VII, section 4 may not be construed in such a limited manner to give effect to all of its provisions.

Rather, sections 1, 4, and 14 of article VII must all be read together and given the same prominence and effectiveness. When construed in such a manner, the plain language of article VII, section 4 specifically empowers the General Assembly to provide a distinct method of casting a ballot for electors who are present in their municipality on a primary, general, or municipal election day by permitting the use of no-excuse mail-in ballots. This method is distinct from an elector's appearance at his or her district of residence to cast a ballot as provided in article VII, section 1, either by paper ballot or by the use of a machine pursuant to article VII, section 6, or the use of an absentee ballot by an elector who is absent from his or her municipality on the day of a primary, general, or municipal election as provided in article VII, section 14.

Finally, although not addressed by the Majority, Petitioners note that Section 11 of Act 77 contains a "poison pill" that would invalidate all of Act 77's provisions if this Court determines that any of its provisions are invalid. *See* Section 102 of the Election Code Note, 25 P.S. §2602 Note ("Section 11 of [Act 77] provides that 'Sections 1, 2, 3, 3.2, 4, 5, 5.1, 6, 7, 8, 9 and 12 of this act are nonseverable. ***If any provision of this act or its application to any person or circumstance is held***

***invalid, the remaining provisions or applications of this act are void.***'") (emphasis added). As the Supreme Court has observed:

> [A]s a general matter, nonseverability provisions are constitutionally proper. There may be reasons why the provisions of a particular statute essentially inter-relate, but in ways which are not apparent from a consideration of the bare language of the statute as governed by the settled severance standard set forth in Section 1925 of the Statutory Construction Act[, 1 Pa. C.S. §1925]. In such an instance, the General Assembly may determine that it is necessary to make clear that a taint in any part of the statute ruins the whole.

*Stilp*, 905 A.2d at 978. Thus, if the no-excuse mail-in provisions of Act 77 are found to be unconstitutional, all of Act 77's provisions are void.

Nevertheless, as outlined above, article VII, section 4 by its plain language specifically empowers the General Assembly to provide for this new method of casting a no-excuse mail-in ballot, and Petitioners' claims regarding the constitutionality of Act 77 are without merit. Accordingly, unlike the Majority, I would grant Respondents' Application for Summary Relief with respect to the substantive claims of Act 77's constitutionality, and dismiss Petitioners' petitions for review with prejudice.

MICHAEL H. WOJCIK, Judge

Judge Ceisler joins in this Concurring/Dissenting Opinion.